

FILED

Date JAN 25, 2021     Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

ISRAEL OTERO and                                  Case No. 6:21-cv-118-ORL-40DCI
PURA RODRIGUEZ

     Plaintiffs

v.

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE
SERVICING,  BANK OF NEW YORK MELLON,
TROMBERG MORRIS & POULIN PLLC., ANDREA R.
TROMBERG, individually,  Florida Ninth Judicial Circuit
Court  Judges BOB P. LEBLANC, LISA T. MUNYON,
CHAD K. ALVARO,  Florida Fifth District Court of Appeal
Judges  RICHARD B. ORFINGER, JAY P. COHEN,
FREDERIC RAND WALLIS

     Defendants                                **JURY TRIAL DEMANDED**


# **COMPLAINT**

1

NOW COMES Plaintiffs, Israel Otero and Pura Rodriguez, and complaining of NewRez LLC. d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), Bank of New York Mellon ("BONYM"), Tromberg Morris & Poulin PLLC. ("TMP"), Andrea R. Tromberg ("Attorney Tromberg"), Florida Ninth Judicial Circuit Court Judges Bob P. LeBlanc,  Lisa T. Munyon,  Chad K. Alvaro, Florida Fifth District Court of Appeal Judges Richard B. Orfinger,  Jay P. Cohen,  Frederic Rand Wallis, alleges as follows:

### Jurisdiction and Venue

1.  Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiffs Israel Otero and Pura Rodriguez are citizens of the State of Florida residing in Orange County, Florida. Defendant NewRez LLC does business in Florida and around the country as Shellpoint Mortgage Servicing. NewRez LLC is based in Fort Washington, Pennsylvania and Shellpoint Mortgage Servicing Inc. is an operating division of NewRez LLC with its main office in Greenville, South Carolina. Defendant Bank of New York Mellon ("BONYM") is a corporation organized and existing under the laws of the State of Delaware and headquartered in New York City, New York. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 as shall be established by proof at time of trial.

2.   The action in this complaint arises under a federal question, namely the FDCPA, 15 U.S.C. § 1692, et seq., and jurisdiction therefore proper pursuant to 28 U.S.C. § 1331. This is an action for damages brought by Plaintiffs Otero and Rodriguez for Defendants NewRez LLC d/d/a Shellpoint Mortgage Servicing ("Shellpoint") and Tromberg Morris & Poulin PLLC (TMP) violations of the Federal Fair Debt Collection Practice ("FDCPA"). Entities engaged in foreclosure through judicial processes are generally subject to the FDCPA as "debt collectors."

3.   This action is brought pursuant to 42 U.S.C. Section 1983 for deprivation under color of law of Plaintiffs rights as secured by the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Plaintiffs brings this suit against Defendants in his/her capacity as state judges. Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution. Under 42 U.S.C. §1983, state actors are prohibited from violating the civil rights of others. The plain language of § 1983 contemplates a declaratory judgment against judicial officers in their official capacities. In this action Otero and Rodriguez seek a declaration that Judges Bob LeBlanc, Lisa T. Munyon, Chad K. Alvaro, Richard B. Orfinger, Jay P. Cohen, and F. Rand Wallis (in their official capacities) violated and continues to violate the Constitution.

4.   The main events giving rise to this action occurred within this district, and venue is therefore proper pursuant to 28 U.S.C. § 1391(b) (2).

**The Parties**

5. Plaintiffs, Israel Otero and Pura Rodriguez ("Plaintiffs") are natural person, husband and wife and citizens of the State of Florida residing in Orange County, Florida.

6. Defendant Bank of New York Mellon is an American worldwide banking and financial services holding company headquartered in New York City, New York. It was formed on July 1, 2007, as a result of the merger of the Bank of New York and Mellon Financial Corporation. BNYM is a corporation organized and existing under the laws of the State of Delaware and regularly does business in this District and across the country acting as a Trustee for a variety of securitized loan trusts which own mortgages.

7. Defendant NewRez LLC does business in Florida and around the country as Shellpoint Mortgage Servicing. Defendant is a mortgage servicing company and acts as the servicer for numerous residential mortgage loans across the country, including those for properties owned by Florida residents and located within in Florida. At all material times herein, Defendant is a "debt collector" as defined by the 15 U.S.C.A. 1692a. NewRez LLC is based in Fort Washington, Pennsylvania. Shellpoint Mortgage Servicing, Inc. is an operating division of NewRez LLC with its main office in Greenville, South Carolina. Defendant regularly conducts business in Orlando, Orange County, Florida.

8. Defendant, Tromberg Morris & Poulin PLLC. ("TMP" ), is a Florida Professional Corporation and law firm engaged in the business of collecting

4

consumer debts, which operates from offices located at 1515 South Federal Hwy #100, Boca Raton, Florida 33432. TMP is vicariously liable for the actions of managing member Andrea R. Tromberg.

9. Defendant, Andrea R. Tromberg ("Attorney Tromberg"), is a Florida licensed attorney. Tromberg was Gladstone Law Group P.A managing attorney since 2011. In 2017 Tromberg took over Gladstone Law Group P.A creating the Tromberg Law Group LLC. In 2020 the law firm changed its name to Tromberg Morris & Poulin PLLC. Defendant regularly collect or attempt to collect debts for other parties. Defendant is "debt collector[s]" as that term is defined in the FDCPA. All acts or omissions of Attorney Tromberg were within the scope of her employment with the law firm or were otherwise authorized by the law firm.

10. Defendant, Bob P. LeBlanc is a judge of the Florida Ninth Circuit Court, located at 425 N. Orange Avenue Orlando, Florida 32801.

11. Defendant, Lisa T. Munyon is a judge of the Florida Ninth Circuit Court, located at 425 N. Orange Avenue Orlando, Florida 32801.

12. Defendant, Chad K. Alvaro is a judge of the Florida Ninth Circuit Court, located at 425 N. Orange Avenue Orlando, Florida 32801.

13. Defendant, Richard B. Orfinger is a judge of the Florida Fifth District Court of Appeal, located at 300 South Beach Street Daytona Beach, Florida 32114.

14. Defendant, Jay P. Cohen is a judge of the Florida Fifth District Court of Appeal, located at 300 South Beach Street Daytona Beach, Florida 32114.

15.  Defendant, Frederic Rand Wallis is a judge of the Florida Fifth District Court of Appeal, located at 300 South Beach Street Daytona Beach, Florida 32114.

## FACTUAL ALLEGATIONS RELATING
## TO BANK OF NEW YORK MELLON

16.  The right to seek judicial redress for grievances is grounded in several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause. In some ways, this breadth of origin has afforded the right of access to courts a measure of legitimacy insofar as its constitutionality is well-established. An attorney, as an officer of the court, has a duty of honesty towards the court. Where an attorney neglects that duty and obtains a judgment based on conduct that actively defrauds the court, perpetrates fraud on the court. A cause of action for fraud on the court can be maintained against one who is not an officer of the court and in whose favor judgment was granted if that person colluded with an officer of the court (attorney) to perpetrate fraud on the court and thereby obtained the favorable judgment. The U.S Supreme Court has recognized that for standing purposes, a loss of even a small amount of money is ordinarily an injury. Foreclosure fraud is a term encompassing any type of scheme involving misrepresentations or false statements related to foreclosure. In every action there must be a real plaintiff who is a person in law and is possessed of a legal entity or existence as a natural, artificial, or quasi-artificial

person. [A]n action may not be maintained in the name of a plaintiff who is not a natural or an artificial person having legal entity to sue or be sued.

17.  Plaintiffs Otero and Rodriguez are suing the Bank of New York Mellon ("BONYM") because of BONYM ongoing efforts to foreclose on their home without cause. BONYM colluded with attorney Andrea R. Tromberg (an officer of the court) and perpetrated fraud on the court to obtain the September 10, 2014 judgment of foreclosure. BONYM cannot be the trustee for a non-existent securitized trust. In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that BONYM wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

18.  On April 27, 1998, Plaintiffs Otero and Rodriguez executed a note and mortgage on a residential property in Orlando Florida, Orange County. The lender and beneficiary of the mortgage was Republic Bank, a St. Petersburg Florida based Republic Bancshares Inc. Exhibit 1. On 2004 Republic Bank was acquired by Branch Banking & Trust Company ("BB&T").

19.  Attorney Andrea R. Tromberg was Gladstone Law Group P.A managing partner since 2011. Siting at the top of the law firm hierarchy on January 2014 she submitted for recording the December 10, 2013 fraudulent Assignment of Mortgage that purported to document a transaction whereby BB&T "does hereby grant, sell, assign, transfer, and set over unto Assignee, the Bank of New York

Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates

Series 2004-SD2… a certain mortgage, together with the note and obligation

described in said mortgage." Exhibit 2. In 2017 Andrea R. Tromberg took over

Gladstone Law Group creating the Tromberg Law Group LLC. On 2020 Tromberg

Law Group changed its name to Tromberg Morris & Poulin PLLC ("TMP").

Exhibit 3.

20. On February 20, 2014, Gladstone Law Group filed the foreclosure

suit. The complaint filed in the Florida Ninth Judicial Circuit Court Case No. 2014-

CA-1836 named BONYM in its capacity as trustee under the Pooling and

Servicing Agreement ("PSA") and Bank of America N.A ("BANA") as attorney in

fact and loan servicer. Exhibit 4. On July 28, 2014, Circuit Judge Margaret

Schreiber entered an order scheduling a non-jury trial for September 10, 2014. The

September 10, 2014 hearing transcript show that no trial took place. At the hearing,

when Ninth Judicial Circuit Judge Theothis Bronson approved the last minute oral

agreement he was unaware that BANA and the trustee of record BONYM did not

have authority or power to initiate the foreclosure process on behalf of Cwabs Inc.

Asset Backed Certificates Series 2004- SD2 (the "Trust"). Judge Bronson had no

opportunity to verify that Defendant Pura Rodriguez understood the terms of the

judicially approved contract (consent judgment) because she was not present.

When Bronson signed the September 10, 2014 final judgment of foreclosure

(Exhibit 5) he was unaware that the attorneys had settled the case without

Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to

present her case in court and the right to fair trial. Otero and Rodriguez filed a

lawsuit for legal malpractice and breach of fiduciary duty in the Judicial Circuit

Court Orange County Florida, Case No. 2016-CA-7960. The September 8, 2016

complaint named attorney Omar J. Arcia of the Arcia Law Firm and attorney

Sunny L. Hillary of Hillary P.A as defendants.

21. The time for filing an appeal expired. Several weeks after the judgment of

foreclosure was entered the fraud came to light. The Plaintiff existence is required

to invoke the Court 's subject matter jurisdiction. In foreclosure cases where the

Plaintiff is a securitized Trust, there is a growing movement among courts to

require the Trust to establish the unbroken chain of transfers, deliveries and

acceptances of the mortgage note from the Originator to the Sponsor to the

Depositor and finally to the Trust. Federal law provides for the creation of

mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of

transformation of non-tradable assets into tradable securities. A securitized loan is

owned by a Trust established by the issuer of securitized bonds backed the loan.

The Pooling and Servicing Agreement ("PSA") is the contract that governs the

relationship between the various parties in the securitization process of mortgage

backed securities ("MBS") and controls what can and can't be done with the trust.

The PSA will state, among other things, the exact steps needed to create a trust.

The servicer is responsible for servicing MBS mortgage loans for the MBS trusts

that own the mortgage loans. In judicial proceedings the trustee is only a nominal

or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates

Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public shortly after filing with the SEC. If filed by U.S. domestic companies, these documents are available on the "SEC EDGAR" database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation the SEC certified that "The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM colluded with an officer of the court, attorney Andrea R. Tromberg and

perpetrated fraud on the court to obtained the September 10, 2014 final judgment

of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset

Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the

certificates holders did not exist when the foreclosure complaint was filed and at

no time thereafter.

22.    On November 5, 2014 Otero and Rodriguez filed a motion to vacate

final judgment pursuant to Florida Rule Civil Procedure 1.540 (b) (3). The motion

asserted the final judgment was procured by fraud. The court held hearing on the

motion on January 20, 2015. Circuit Judge Charles Holcomb determined that the

motion alleged a colorable entitlement to relief and ordered a continuance and a

3 hours evidentiary Hearing. Exhibit 8. The February 12, 2015 hearing transcript

show that Circuit Judge Margaret Schreiber did not allow full presentation of

arguments in support of the motion to accord the full right to be heard according to

law, disregarded the attorneys extrinsic fraud, and refused to conduct the 3 hours

evidentiary hearing ordered by Judge Holcomb.

23.    Otero and Rodriguez did file a motion for rehearing, which was denied

by Judge Schreiber. They appealed to the Florida Fifth District Court of Appeal the

order denying their motion for rehearing (Case No. 5D15-1124), the appeal

was dismissed for lack of jurisdiction because it was untimely. Exhibit 9.  Otero

and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale

and appealed one order denying their motion to cancel the sale (Case No. 5D16-

1551), the appeal was dismissed for lack of jurisdiction because the issue on appeal

became moot. Exhibit 10.

24. On February 11, 2018, Otero and Rodriguez filed the Motion to Vacate Void Judgment Pursuant to Florida Rule of Civil Procedure 1.540 (b) (4). The motion asserted the September 10, 2014 final judgment of foreclosure is void because was procured by fraud; (1) BONYM is proceeding under a false identity, he cannot be the trustee for a non-existent securitized trust. At the September 10, 2014 final judgment hearing Otero relying on the attorneys' Sunny L. Hillary erroneous legal advice agreed to the terms of the last minute oral agreement. A consent judgment is a judicial approved contract, a contract with a non-existent entity is nullity, and (2) Defendant Rodriguez consent did not exist at the time the Court approved the last minute oral agreement and promulgated it as a judgment. The attorneys deprived Rodriguez of an opportunity to present her case in court and the right to fair trial. On June 25, 2018 Circuit Judge Bob LeBlanc denied the motion based upon the doctrine of res judicata. Exhibit 11.

25. Otero and Rodriguez appealed LeBlanc's order to the Florida Fifth District Court of Appeal. After the appeal on Case No. 5D18-2103 was fully brief the three-judge panel Orfinger, Cohen and Wallis entered the January 22, 2019 Per Curiam affirmed (PCA) without written opinion. Exhibit 12. On the same day the panel entered the Order to Show Cause. Exhibit 13. The PCA indicates the panel agreed with LeBlanc's denial of the motion to vacate void judgment on res judicata grounds and the Order to Show Cause indicate the panel applied the law of the case doctrine. Otero and Rodriguez filed a response to the Order to Show Cause.

On March 11, 2019 the panel entered the order prohibiting further pro se filings attacking the September 10, 2014 final judgment of foreclosure rendered on Case No. 2014-CA-1836. Exhibit 14.

26. There was no trial held on September 10, 2014. After the fraud came to light it was evident that Otero and Rodriguez are entitled to a fair trial. The fact that they owed money on their house was not the point. BONYM colluded with attorney Andrea R. Tromberg (an officer of the court) and sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the matter. The wrongful conduct harmed the judicial system and it also harmed Otero and Rodriguez. As a result Otero and Rodriguez suffered loss — that loss being the lost rights to the subject real estate property. The legal wrong cause harm. Otero and Rodriguez were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. BONYM put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO
## NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING

27.  The Fair Debt Collection Practices Act ("FDCPA") is a federal statute intended to eliminate abusive practices used by debt collectors, 15 U.S.C. § 1692 a (6). The FDCPA authorizes consumers to file private suits against those who violate the statute by attempt to collect debts from consumers through prohibited acts – particularly acts that are harassing, misleading, deceptive, or false. Entities engaged in foreclosure through judicial processes are generally subject to the Federal Debt Collection Practices Act ("FDCPA") as debt collectors. The purpose of foreclosure is to obtain payment on the underlying loan, and in rem legal proceedings are not excluded from the scope of the FDCPA. The FDCPA applies to a lawyer who regularly, through litigation, tries to collect consumer debts. With § 1692 f (1), Congress identified a harm — being subjected to attempts to collect debts not owed. This alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. It is similar to the harm suffered by victims of the common law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process. Entities engaged in foreclosure through judicial processes are generally subject to the FDCPA as debt collectors. Foreclosure fraud is a term encompassing any type of scheme involving misrepresentations or false statements related to foreclosure. A cause of action for fraud on the court can be maintained against one who is not an officer of the court if that person colluded with an officer of the court

(attorney) to perpetrate fraud on the court. The U.S Supreme Court has recognized that for standing purposes, a loss of even a small amount of money is ordinarily an injury.

28. Plaintiffs Otero and Rodriguez are suing NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") because of Shellpoint's ongoing efforts to foreclose on their home without cause. Shellpoint persistently has falsely stated that the Bank of New York Mellon as Trustee for the Benefit of the Certificates Holders of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2 is the current owner of the subject mortgage loan. It is axiomatic that the Bank of New York Mellon ("BONYM") cannot be the trustee and Shellpoint the loan servicer for a non-existent (entity) securitized trust. See Paragraph 20 above. Shellpoint colluded with attorney Andrea R. Tromberg (an officer of the court), they perpetrated fraud on the court and their efforts to collect a debt not owed to the questionable securitized trust violated the FDCPA. In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that Shellpoint wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

29. On April 27, 1998, Otero and Rodriguez executed and delivered a promissory note to Republic Bank, a St. Petersburg Florida based Republic Bancshares Inc., for personal, family, or household services, specifically a mortgage loan on their home. That same day they executed a purchase money

mortgage securing payment to Republic Bank. Exhibit 1. On 2004 Republic Bank was acquired by Branch Banking & Trust Company ("BB&T").

30.  Attorney Andrea R. Tromberg was Gladstone Law Group P.A managing partner since 2011. On January 2014, siting at the top of the law firm hierarchy she submitted for recording the December 10, 2013 fraudulent Assignment of Mortgage that purported to document a transaction whereby BB&T "does hereby grant, sell, assign, transfer, and set over unto Assignee, the Bank of New York Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2... a certain mortgage, together with the note and obligation described in said mortgage." Exhibit 2. In 2017 Andrea R. Tromberg took over Gladstone Law Group creating the Tromberg Law Group LLC. On 2020 Tromberg Law Group changed its name to Tromberg Morris & Poulin PLLC ("TMP"). Exhibit 3. In TMP the client number is 12- 003696-FST\2014-CA-1836-0 / Shellpoint.

31.  On February 20, 2014, Gladstone Law Group filed the foreclosure suit. The complaint named BONYM in its capacity as trustee under the Pooling and Servicing Agreement ("PSA") and Bank of America N.A ("BANA") as attorney in fact and loan servicer. The complaint was filed in the Ninth Judicial Circuit Court of Florida (Case No. 2014-CA-1836) along with a validation notice to collect a debt, copy of note and mortgage, rider to note, a loan modification agreement, and an undated blank endorsed Allonge which was a separate

document from and not affixed to the note. Exhibit 4. Paragraph 20 of the
complaint states:

> This is an attempt to collect a debt, and any information obtained will be used
> for that purpose. The notice required by the Fair Debt Collection Practices
> Act, 15 U.S.C. §1692 (g) et seq., as amended, is attached to this complaint.

The last paragraph in the complaint states:

> WHEREFORE Plaintiff request that….. a deficiency judgment be entered
> against Defendant(s), Israel Otero and Pura Rodriguez, if proceeds from that
> sale are insufficient to pay the plaintiff claims.

A promissory note is a "debt" within the plain language of § 1692 a (5). The filing
of the state court complaint is a debt collection activity, money owed on a
promissory note secured by a mortgage is a debt for purposes of the FDCPA. The
February 20, 2014 foreclosure complaint seeking enforcement of a promissory note
and a monetary deficiency judgment constitutes debt collection under the FDCPA.

32. On September 10, 2014, the trial court entered the final judgment of
foreclosure in favor of the (Plaintiff) Trust. Exhibit 5. The time for filing an appeal
expired. Several weeks after the judgment was entered the fraud came to light. The
Plaintiff existence is required to invoke the Court 's subject matter jurisdiction. In
foreclosure cases where the Plaintiff is a securitized Trust, there is a growing
movement among courts to require the Trust to establish the unbroken chain of
transfers, deliveries and acceptances of the mortgage note from the Originator to
the Sponsor to the Depositor and finally to the Trust. Federal law provides for the

creation of mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of transformation of non-tradable assets into tradable securities. A securitized loan is owned by a Trust established by the issuer of securitized bonds backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of mortgage backed securities ("MBS") and controls what can and can't be done with the trust. The PSA will state, among other things, the exact steps needed to create a trust. The servicer is responsible for servicing MBS mortgage loans for the MBS trusts that own the mortgage loans. In judicial proceedings the trustee is only a nominal or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security

trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public shortly after filing with the SEC. If filed by U.S. domestic companies, these documents are available on the "SEC EDGAR" database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation the SEC certified that "The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM and BANA colluded with an officer of the court, attorney Andrea R. Tromberg and perpetrated fraud on the court to obtained the September 10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

33.    On January, 2015 Otero and Rodriguez received a letter from BB&T Senior Vice President Cravon A. Williams. In the letter Mr. Williams stated:

> Republic Bank was acquired by BB&T on year 2004.... As seen
> in the transaction history your loan was transferred in June 2002
> prior to the acquisition of Republic Bank by BB&T.

Mr. Williams statement indicate that BB&T never own the subject loan and could not on December 13, 2013 assign the original bank's rights to the Bank of New

York Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2 because the subject mortgage was not a Republic Bank asset when BB&T completed its acquisition of the St. Petersburg, Fla.-based Republic Bancshares Inc. Exhibit15.

34.  By letter dated 21 January 2016 Otero and Rodriguez were notified of the questionable January 15, 2016 loan servicing transfer from BANA to Shellpoint. Exhibit 16. Later, Shellpoint alleged that the mortgage loan was in "default" and they have been instructed by the owner of the loan to commence foreclosure. The validity of the debt was disputed. Exhibit 17. On March, 2016 Shellpoint provided the following:

A. The misleading March 11, 2016 letter stating that the owner of the loan is the Bank of New York Mellon as Trustee for the Benefit of the Certificates Holders of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2. Exhibit 18.

B. The fraudulent August 29, 2008 Loan Modification Agreement which named Countywide as the "Lender" and amends and supplements (1) the Mortgage, Deed of Trust, or Deed to secure Debt (the "Security Instrument" dated the 30th day of June, 2004 and (2) the Note bearing the same date as, and secured by, the Security Instrument. Exhibit 19.

C. The fraudulent December 10, 2013 Assignment of Mortgage. Exhibit 2.

Thereafter Shellpoint monthly corresponded with Otero and Rodriguez by U.S. Mail by means of a periodic mortgage statements. Exhibit 20.

35.  The events and the judicial proceedings preceding the questionable January 15, 2016 loan servicing transfer from BANA to Shellpoint are described more fully above. Plaintiffs reincorporate herein by reference the preceding paragraphs 17 through 22.

36.  Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale. The fact that they owed money on their house was not the point. They would gladly resume payments on the mortgage. But the trustee bank doesn't own the loan because the trustee is only a nominal or formal party suing on behalf of the trust, the investors don't own it because the securitization trust was never created and the original lender, Republic Bank, no longer exists. So whom do they pay?

37.  Shellpoint made false representations, illegally attempt to collect a debt not owned to the questionable securitized trust, made ongoing efforts to foreclose on Otero and Rodriguez home without cause and engaged in an act prohibited by 15 U.S.C. § 1692 e (10). [A]n action may not be maintained in the name of a plaintiff who is not a natural or an artificial person having legal entity to sue or be sued. Shellpoint colluded with BONYM and attorney Andrea R. Tromberg (an officer of the court) and sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the matter. The wrongful conduct harmed the judicial system and it also harmed Otero and Rodriguez. Otero and Rodriguez were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological

pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. Shellpoint put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO ANDREA R. TROMBERG AND TROMBERG MORRIS & POULIN PLLC

38. The Fair Debt Collection Practices Act ("FDCPA") is a federal statute intended to eliminate abusive practices used by debt collectors, 15 U.S.C. § 1692 a (6). The FDCPA authorizes consumers to file private suits against those who violate the statute by attempt to collect debts from consumers through prohibited acts – particularly acts that are harassing, misleading, deceptive, or false. Entities engaged in foreclosure through judicial processes are generally subject to the Federal Debt Collection Practices Act ("FDCPA") as debt collectors. The purpose of foreclosure is to obtain payment on the underlying loan, and in rem legal proceedings are not excluded from the scope of the FDCPA. The FDCPA applies to a lawyer who regularly, through litigation, tries to collect consumer debts. With § 1692 f (1), Congress identified a harm—being subjected to attempts to collect debts not owed. This alleged intangible harm has a close relationship to a harm that

has traditionally been regarded as providing a basis for a lawsuit in English or American courts. It is similar to the harm suffered by victims of the common law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process. The U.S Supreme Court has recognized that for standing purposes, a loss of even a small amount of money is ordinarily an injury. Foreclosure fraud is a term encompassing any type of scheme involving misrepresentations or false statements related to foreclosure. An attorney, as an officer of the court, has a duty of honesty towards the court. Where an attorney neglects that duty and obtains a judgment based on conduct that actively defrauds the court, perpetrates fraud on the court. In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that TMP and Andrea R. Tromberg wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

39.  On April 27, 1998, Otero and Rodriguez executed and delivered a promissory note to Republic Bank, a St. Petersburg Florida based Republic Bancshares Inc., for personal, family, or household services, specifically a mortgage loan on their home. That same day they executed a purchase money mortgage securing payment to Republic Bank. Exhibit 1. On 2004 Republic Bank was acquired by Branch Banking & Trust Company ("BB&T").

40.  Attorney Andrea R. Tromberg was Gladstone Law Group P.A managing partner since 2011. On January 2014, siting at the top of the law firm hierarchy she

submitted for recording the December 10, 2013 fraudulent Assignment of Mortgage that purported to document a transaction whereby BB&T "does hereby grant, sell, assign, transfer, and set over unto Assignee, the Bank of New York Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2... a certain mortgage, together with the note and obligation described in said mortgage." Exhibit 2. In 2017 Ms. Tromberg took over Gladstone Law Group creating the Tromberg Law Group LLC. On 2020 Tromberg Law Group changed its name to Tromberg Morris & Poulin PLLC ("TMP"). Exhibit 3. TMP is a Florida based law firm that has established a Nationwide consumer debt collection practice, regularly collects or attempts to collect debts for other parties. In TMP the client number is 12- 003696-FST\2014-CA-1836-0 / Shellpoint.

41.   On February 20, 2014, Gladstone Law Group filed the foreclosure suit. The complaint named the Bank of New York Mellon ("BONYM") in its capacity as trustee under the Pooling and Servicing Agreement ("PSA") and Bank of America N.A ("BANA") as attorney in fact and loan servicer. Exhibit 4. The complaint was filed in the Ninth Judicial Circuit Court of Florida (Case No. 2014-CA-1836) along with a validation notice to collect a debt, copy of note and mortgage, rider to note, a loan modification agreement, and an undated blank endorsed Allonge which was a separate document from and not affixed to the note. **Exhibit ??.** Paragraph number 20 of the complaint states:

> This is an attempt to collect a debt, and any information obtained will be used for that purpose. The notice required by the Fair Debt Collection Practices Act, 15 U.S.C. §1692 (g) et seq., as amended, is attached to this complaint.

The last paragraph of the complaint states:

> WHEREFORE Plaintiff request that….. a deficiency judgment be entered against Defendant(s), Israel Otero and Pura Rodriguez, if proceeds from that sale are insufficient to pay the plaintiff claims.

A promissory note is a "debt" within the plain language of § 1692 a (5). The filing of the state court complaint is a debt collection activity, money owed on a promissory note secured by a mortgage is a debt for purposes of the FDCPA. The February 20, 2014 foreclosure complaint seeking enforcement of a promissory note and a monetary deficiency judgment constitutes debt collection under the FDCPA.

42. On September 10, 2014, the trial court entered a final judgment of foreclosure in favor of the (Plaintiff) Trust. Exhibit 5. The time for filing an appeal expired. Several weeks after the judgment was entered the fraud came to light. The Plaintiff existence is required to invoke the Court 's subject matter jurisdiction. In foreclosure cases where the Plaintiff is a securitized Trust, there is a growing movement among courts to require the Trust to establish the unbroken chain of transfers, deliveries and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and finally to the Trust. Federal law provides for the creation of mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of transformation of non-tradable assets into tradable securities. A securitized loan is owned by a Trust established by the issuer of securitized bonds backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of

mortgage backed securities ("MBS") and controls what can and can't be done with the trust. The PSA will state, among other things, the exact steps needed to create a trust.The servicer is responsible for servicing MBS mortgage loans for the MBS trusts that own the mortgage loans. In judicial proceedings the trustee is only a nominal or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public shortly after filing with the SEC. If filed by U.S. domestic companies, these documents are available on the "SEC EDGAR" database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation

the SEC certified that "The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM and BANA colluded with an officer of the court, attorney Andrea R. Tromberg and perpetrated fraud on the court to obtained the September 10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

43.   On January, 2015 Otero and Rodriguez received a letter from BB&T Senior Vice President Cravon A. Williams. In the letter Mr. Williams stated:

> Republic Bank was acquired by BB&T on year 2004.... As seen
> in the transaction history your loan was transferred in June 2002
> prior to the acquisition of Republic Bank by BB&T.

Mr. Williams statement indicate that BB&T never own the subject loan and could not on December 13, 2013 assign the original bank's rights to the Bank of New York Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2 because the subject mortgage was not a Republic Bank asset when BB&T completed its acquisition of the St. Petersburg, Fla.-based Republic Bancshares Inc. Exhibit 15.

44.   By letter dated 21 January 2016 Otero and Rodriguez were notified of the questionable January 15, 2016 loan servicing transfer from BANA to Shellpoint. Exhibit 16. Later, Shellpoint alleged that the mortgage loan was in "default" and they have been instructed by the owner of the loan to commence foreclosure. The validity of the debt was disputed (Exhibit 17) and on March, 2016 Shellpoint provided the following:

A.   The misleading March 11, 2016 letter stating that the owner of the loan is the Bank of New York Mellon as Trustee for the Benefit of the Certificates Holders of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2. Exhibit 18.

B.   The fraudulent August 29, 2008 Loan Modification Agreement which named Countywide as the "Lender" and amends and supplements (1) the Mortgage, Deed of Trust, or Deed to secure Debt (the "Security Instrument" dated the 30th day of June, 2004 and (2) the Note bearing the same date as, and secured by, the Security Instrument. Exhibit 19.

C.   The fraudulent December 10, 2013 Assignment of Mortgage. Exhibit 2.


45.   The events and the judicial proceedings preceding the questionable January 15, 2016 loan servicing transfer from BANA to Shellpoint are described more fully above. Plaintiffs reincorporate herein by reference the preceding paragraphs 19 through 22.

46.   Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale. The fact that they owed money on their house was not the point.

They would gladly resume payments on the mortgage. But the trustee bank doesn't own the loan because the trustee is only a nominal or formal party suing on behalf of the trust, the investors don't own it because the securitization trust was never created and the original lender, Republic Bank, no longer exists. So whom do they pay?

47.  An action may not be maintained in the name of a (Plaintiff) non-existent Trust. BONYM cannot be the trustee and Shellpoint the loan servicer for a non-existent securitized trust. See Paragraph 20 above. Attorney Andrea R. Tromberg siting at the top of the law firm hierarchy made false representations, illegally attempt to collect a debt not owned, made ongoing efforts to foreclose on Otero and Rodriguez home without cause and engaged in an act prohibited by 15 U.S.C. § 1692 e (10). All acts or omissions of Andrea R. Tromberg were within the scope of her employment with the law firm or were otherwise authorized by the law firm. TMP is vicariously liable for the actions of managing member Andrea R. Tromberg.

48.  Attorney Andrea R. Tromberg (an officer of the court) colluded with BONYM and Shellpoint and sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the matter. The wrongful conduct harmed the judicial system and it also harmed Otero and Rodriguez. As a result Otero and Rodriguez suffered loss — that loss being the lost rights to the subject real estate property. The legal wrong cause harm. Otero and Rodriguez were compelled to defend against a fabricated claim

which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. Andrea R. Tromberg put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO FLORIDA NINTH JUDICIAL CIRCUIT COURT JUDGE BOB P. LEBLANC

49. Procedural due process is required by the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Due process requires government officials to follow fair procedures before depriving a person of life, liberty, or property. When the government seeks to deprive a person of one of those interests, procedural due process requires at least for the government to afford the person a neutral decision maker and that the decision be made based on the record. A neutral arbiter is the linchpin of due process and the foundation upon which the system of justice is built. Due process does not permit fraud on the court to deprive any person of property. A biased court also violates constitutional due process guarantees by tolerating that fraud. Title 42 of the United States Code Section 1983 provides an individual the right to sue state government employees

and others acting "under color of state law" for civil rights violations. The plain language of § 1983 contemplates a declaratory judgment against judicial officers in their official capacities.

50.  Plaintiffs Otero and Rodriguez bring this suit against Defendant Bob P. LeBlanc ("LeBlanc") in his capacity as state judge. As the arbiter of the law, the Court is charged with ensuring the American people the promise of equal justice under law and, thereby, also functions as guardian and interpreter of the Constitution. Disregard of the law, evidence, established precedent, and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. LeBlanc's failure to act as a neutral arbiter deprived Otero and Rodriguez right of due process under the Fifth and Fourteenth Amendment to the United States Constitution. In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that LeBlanc wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

51.  On April 27, 1998, Otero and Rodriguez executed a note and mortgage on a residential property in Orlando Florida, Orange County. The lender and beneficiary of the mortgage was Republic Bank, a St. Petersburg Florida based Republic Bancshares Inc. Exhibit 1. On 2004 Republic Bank was acquired by Branch Banking & Trust ("BB&T").

52. Attorney Andrea R. Tromberg was Gladstone Law Group P.A managing partner since 2011. On January 2014, siting at the top of the law firm hierarchy she submitted for recording the December 10, 2013 fraudulent Assignment of Mortgage that purported to document a transaction whereby BB&T "does hereby grant, sell, assign, transfer, and set over unto Assignee, the Bank of New York Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2… a certain mortgage, together with the note and obligation described in said mortgage." Exhibit 2. In 2017 Ms. Tromberg took over Gladstone Law Group creating the Tromberg Law Group LLC. On 2020 Tromberg Law Group changed its name to Tromberg Morris & Poulin PLLC ("TMP"). Exhibit 3. In TMP the client number is 12- 003696-FST\2014-CA-1836-0 / Shellpoint.

53. On February 20, 2014, Gladstone Law Group filed the foreclosure suit. The complaint named the Bank of New York Mellon ("BONYM") in its capacity as trustee under the Pooling and Servicing Agreement ("PSA") and Bank of America N.A ("BANA") as attorney in fact and loan servicer. Exhibit 4. Otero and Rodriguez filed an answer to the complaint and requested proof that "Plaintiff is in fact the holder of a legitimate promissory note and have the right to foreclose." An order scheduling a nonjury trial was entered. The September 10, 2014 hearing transcript show that no trial took place. At the hearing, when Ninth Judicial Circuit Judge Theothis Bronson approved the last minute oral agreement he was unaware that BANA and the trustee of record BONYM, did not have authority or power to

initiate the foreclosure process on behalf of Cwabs Inc. Asset Backed Certificates Series 2004- SD2 (the "Trust"). At the hearing, Judge Bronson had no opportunity to verify that Pura Rodriguez understood the terms of the judicially approved contract (consent judgment) because she was not present. When Bronson signed the September 10, 2014 final judgment of foreclosure he was unaware that the attorneys had settled the case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court and the right to fair trial. Otero and Rodriguez filed a lawsuit for legal malpractice and breach of fiduciary duty in the Judicial Circuit Court Orange County Florida, Case No. 2016-CA-7960. The September 8, 2016 complaint named attorney Omar J. Arcia of the Arcia Law Firm and attorney Sunny L. Hillary of Hillary P.A as defendants.

54.    On September 10, 2014, the trial court entered a final judgment of foreclosure in favor of the (Plaintiff) Trust. Exhibit 5. The time for filing an appeal expired. Several weeks after the judgment was entered the fraud came to light. The Plaintiff existence is required to invoke the Court 's subject matter jurisdiction. In foreclosure cases where the Plaintiff is a securitized Trust, there is a growing movement among courts to require the Trust to establish the unbroken chain of transfers, deliveries and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and finally to the Trust. Federal law provides for the creation of mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of transformation of non-tradable assets into tradable securities. A securitized loan is owned by a Trust established by the issuer of securitized bonds

backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of mortgage backed securities ("MBS") and controls what can and can't be done with the trust. The PSA will state, among other things, the exact steps needed to create a trust. The servicer is responsible for servicing MBS mortgage loans for the MBS trusts that own the mortgage loans. In judicial proceedings the trustee is only a nominal or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public shortly after filing with the SEC. If filed by U.S.

.

domestic companies, these documents are available on the "SEC EDGAR" database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation the SEC certified that "The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM and BANA colluded with an officer of the court, attorney Andrea R. Tromberg and perpetrated fraud on the court to obtained the September 10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

55.   On November 5, 2014 Otero and Rodriguez filed a motion to vacate final judgment pursuant to Florida Rule Civil Procedure 1.540 (b) (3). The motion asserted the final judgment was procured by fraud. The court held hearing on the motion on January 20, 2015. At the hearing Circuit Judge Charles Holcomb determined that the motion alleged a colorable entitlement to relief and ordered a continuance and a 3 hours evidentiary Hearing. Exhibit 8. The February 12, 2015 hearing transcript show that Circuit Judge Margaret Schreiber did not allow full presentation of arguments in support of the motion to accord the full right to be heard according to law, disregarded the attorneys committed extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Judge Holcomb.

56.  Otero and Rodriguez did file a motion for rehearing, which was denied by Judge Schreiber. They appealed to the Florida Fifth District Court of Appeal the order denying their motion for rehearing (Case No. 5D15-1124), the appeal was dismissed for lack of jurisdiction because it was untimely. Exhibit 9. Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale, and appealed one order denying their motion to cancel the sale (Case No. 5D16-1551), the appeal was dismissed for lack of jurisdiction because the issue on appeal became moot. Exhibit 10.

57.  Otero and Rodriguez filed a Motion to Vacate Void Judgment pursuant to Florida Rule of Civil Procedure 1.540 (b) (4). The motion asserted the judgment is void because was procured by fraud; (1) BONYM is proceeding under a false identity, he cannot be the trustee for a non-existent securitized trust, (2) At the September 10, 2014 final judgment hearing, Defendant Israel Otero, relying on the attorney's Sunny L. Hillary erroneous legal advice, agreed to the terms of the last minute oral agreement. A consent judgment is a judicial approved contract, a contract with a none-existent entity is nullity, and (3) Defendant Pura Rodriguez consent did not exist at the time the Court approved the last minute oral agreement and promulgated it as a judgment. The attorneys' deprived Rodriguez of an opportunity to present her case in court and the right to fair trial.

58.  On June 25, 2018, the court held hearing on the Rule 1.540 (b) (4) Motion. Although Circuit Judge Bob P. LeBlanc did not explain its reasoning in the order denying the motion (Exhibit 11) the transcript of the hearing show that he

denied the motion on res judicata grounds. Procedural due process requires at least
for the government to afford the person a neutral decision maker and that the
decision be made based on the record. On June 25, 2018 LeBlanc deliberately
disregarded:

A. BONYM  brought the foreclosure action on behalf of the non-existent
securitized trust. The alleged owner of the subject mortgage Cwabs Inc. Asset
Backed Certificates Series 2004- SD2 was never created, the trust and the
certificates holders did not exist when the foreclosure complaint was filed and at
no time thereafter.

B. BONYM, Shellpoint and Andrea R. Tromberg cannot and did not
present even a scintilla of evidence to demonstrate that on September 10, 2014 the
attorneys had Rodriguez consent to settle the foreclosure case.

C. The March 8, 2015 hearing transcript show that Circuit Judge Margaret
Schreiber did not allow full presentation of arguments in support of the rule 1.540
(b) (3) motion to vacate judgment to accord the full right to be heard according to
law. Shreiber disregarded the attorneys settled the foreclosure case without
Rodriguez knowledge and consent, and refused to conduct the 3 hours evidentiary
hearing ordered by Circuit Judge Charles Holcomb.

D. The appeals on Florida Fifth District Court of Appeal Case No. 5D15-
1124 and Case No. 5D16-1551 were dismissed for lack of jurisdiction. By its
nature, an order dismissing an appeal signifies that the court did not reach the
merits. Dismissals of appeals generally do not establish the law of the case.

E.   Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved.

F.   Federal Courts and the Supreme Court of Florida has recognized that the law of the case, res judicata and collateral estoppel will not be invoked to bar relief where its application would result in a manifest injustice.

59.   The June 25, 2018 Court Minutes show the ruling of the court "Evidentiary Hearing Held".  Exhibit 21. On June 26, 2018 Otero sent an email to the civil division manager, she spoke with Judge LeBlanc and said "I met with the presiding judge yesterday and he advised that we are not to amend the court minutes." The notice of hearing filed by Otero and Rodriguez on March 12, 2018 contains no indication that the hearing was scheduled as an evidentiary hearing and the order signed by LeBlanc show there was no evidentiary hearing held on that day, nor could it have, the case was closed and could not have presented any evidence or propounded discovery without the court reopening the case. Procedurally, Judge LeBlanc could not have scheduled an evidentiary hearing until determining that Otero and Rodriguez motion to vacate judgment alleged a colorable entitlement to relief. Accordingly, any sua sponte decision by Judge Leblanc to transform the hearing into an evidentiary matter was improper.

60.   On June 26, 2018, Otero and Rodriguez appealed Judge Leblanc post-judgment non-final order denying the February 11, 2018 Rule 1.540 (b) (4) Motion

to Vacate Void Judgment. In the Circuit Court and in the Fifth District Court of
Appeal the BONYM, Shellpoint and Andrea R. Tromberg did not present even a
scintilla of evidence to demonstrate the (Plaintiff) securitized trust was created in
2004 and did not present even a scintilla of evidence to demonstrate the attorneys
had Rodriguez consent to settle the foreclosure case. After the appeal on Case No.
5D18-2103 was fully brief the three-judge panel Orfinger, Cohen and Wallis
entered a Per Curiam affirmed (PCA) without written opinion. Exhibit 12.
On the same day the panel entered an Order to Show Cause (Exhibit 13) and
ordered:

> Appellants shall file with this Court and show cause, within thirty days of the
> date of this order, why Appellants should not be prohibited from filing any
> appeal, petition, pleading or motion pertaining to the final judgment rendered
> in Case No. 2014-CA-1836 unless reviewed and signed by an attorney
> licensed to practice in the State of Florida. See State v. Spencer, 751 So. 2d
> 47 (Fla. 1999).

Otero and Rodriguez filed a response to the Order to Show Cause. On March 11,
2019 the panel entered a Per Curiam Opinion prohibiting further pro se filings
attacking the September 10, 2014 judgment. Exhibit 14.

    61.   There was no trial held on September 10, 2014. After the fraud came to
light it is evident that Otero and Rodriguez are entitled to a fair trial. Due process
does not permit fraud on the court to deprive any person of property. LeBlanc's
June 25, 2018 ruling was arbitrary. Disregard of the law, evidence and established
precedent, tolerate fraud court and failure to uphold the integrity of the judiciary is

not the type of act normally performed only by judges. LeBlanc deprived Otero and Rodriguez of their constitutional right to seek judicial relief for their injury, right to a neutral arbiter, and right to fair trial. What LeBlanc did was beyond the pale of anything that could sensibly be called a judicial act. The wrongful conduct harmed the judicial system and it also harmed Otero and Rodriguez, they were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. LeBlanc put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO FLORIDA
## NINTH JUDICIAL CIRCUIT COURT JUDGE LISA T. MUNYON

62.  Procedural due process is required by the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Due process requires government officials to follow fair procedures before depriving a person of life, liberty, or property. When the government seeks to deprive a person of one of those interests, procedural due process requires at least for the government to afford the person a neutral decision maker and that the decision be made based on

the record. A neutral arbiter is the linchpin of due process and the foundation upon which the system of justice is built Title 42 of the United States Code Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations. The plain language of § 1983 contemplates a declaratory judgment against judicial officers in their official capacities.

63. Plaintiffs Otero and Rodriguez bring this suit against Defendant Lisa T. Munyon ("Munyon") in her capacity as state judge. As the arbiter of the law, the Court is charged with ensuring the American people the promise of equal justice under law and, thereby, also functions as guardian and interpreter of the Constitution. The disregard of the law, evidence, established precedent, and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. Munyon's failure to act as a neutral arbiter deprived Otero and Rodriguez right of due process under the Fifth and Fourteenth Amendment to the United States Constitution. In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that Munyo wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

64. On April 27, 1998, Plaintiffs Otero and Rodriguez executed a note and mortgage on a residential property in Orlando Florida, Orange County. The lender and beneficiary of the mortgage was Republic Bank, a St. Petersburg Florida based

Republic Bancshares Inc. Exhibit 1. On 2004 Republic Bank was acquired by Branch Banking & Trust ("BB&T").

65.  Attorney Andrea R. Tromberg was Gladstone Law Group P.A managing partner since 2011. On January 2014, siting at the top of the law firm hierarchy she submitted for recording the December 10, 2013 fraudulent Assignment of Mortgage that purported to document a transaction whereby BB&T "does hereby grant, sell, assign, transfer, and set over unto Assignee, the Bank of New York Mellon as Trustee for the Benefit of the Cwabs Inc. Asset Backed Certificates Series 2004-SD2… a certain mortgage, together with the note and obligation described in said mortgage." Exhibit 2. In 2017 Ms. Tromberg took over Gladstone Law Group creating the Tromberg Law Group LLC. On 2020 Tromberg Law Group changed its name to Tromberg Morris & Poulin PLLC ("TMP"). Exhibit 3. In TMP the client number is 12- 003696-FST\2014-CA-1836-0 / Shellpoint.

66.  On February 20, 2014, Gladstone Law Group filed the foreclosure suit. The complaint named the Bank of New York Mellon ("BONYM") in its capacity as trustee under the Pooling and Servicing Agreement ("PSA") and Bank of America N.A ("BANA") as attorney in fact and loan servicer. Exhibit 4. Otero and Rodriguez filed an answer to the complaint and the case was scheduled for a nonjury trial. The September 10, 2014 hearing transcript show that no trial took place. At the hearing, when Ninth Judicial Circuit Judge Theothis Bronson approved the last minute oral agreement he was unaware that BANA and the trustee of record, BONYM, did not have authority or power to initiate the

foreclosure process on behalf of Cwabs Inc. Asset Backed Certificates Series 2004- SD2 (the "Trust"). Judge Bronson had no opportunity to verify that Pura Rodriguez understood the terms of the judicially approved contract (consent judgment) because she was not present. When Bronson signed the September 10, 2014 final judgment of foreclosure he was unaware that the attorneys had settled the case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court (extrinsic fraud). Otero and Rodriguez filed a lawsuit for legal malpractice and breach of fiduciary duty in the Judicial Circuit Court Orange County Florida, Case No. 2016-CA-7960. The September 8, 2016 complaint named attorney Omar J. Arcia of the Arcia Law Firm and attorney Sunny L. Hillary of Hillary P.A as defendants.

67.   On September 10, 2014, the trial court entered the final judgment of foreclosure in favor of the (Plaintiff) Trust. Exhibit 5. The time for filing an appeal expired. Several weeks after the judgment was entered the fraud came to light. The Plaintiff existence is required to invoke the Court 's subject matter jurisdiction. In foreclosure cases where the Plaintiff is a securitized Trust, there is a growing movement among courts to require the Trust to establish the unbroken chain of transfers, deliveries and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and finally to the Trust. Federal law provides for the creation of mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of transformation of non-tradable assets into tradable securities. A securitized loan is owned by a Trust established by the issuer of securitized bonds

backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of mortgage backed securities ("MBS") and controls what can and can't be done with the trust. The PSA will state, among other things, the exact steps needed to create a trust. The servicer is responsible for servicing MBS mortgage loans for the MBS trusts that own the mortgage loans. In judicial proceedings the trustee is only a nominal or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public shortly after filing with the SEC. If filed by U.S.

domestic companies, these documents are available on the "SEC EDGAR"
database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation
the SEC certified that "The records and files do not disclose that any filing has
been received in this commission under the name of CWABS Asset Backed
Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that
there is no (PSA) agreement between depositor and the trust and the trustee and the
servicer. BONYM and BANA colluded with an officer of the court, attorney
Andrea R. Tromberg and perpetrated fraud on the court to obtained the September
10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage
Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the
PSA, the trust and the certificates holders did not exist when the foreclosure
complaint was filed and at no time thereafter.

 68. On November 5, 2014 Otero and Rodriguez filed a timely motion to
vacate final judgment pursuant to Fla. R. Civ. P. 1.540 (b) (3). The motion
asserted the final judgment of foreclosure was procured by fraud. The court
held hearing on the motion on January 20, 2015. At the hearing Circuit Judge
Charles Holcomb determined that the motion alleged a colorable entitlement to
relief and ordered a continuance and a 3 hours evidentiary Hearing. Exhibit 8.
The February 12, 2015 hearing transcript show that Ninth Judicial Circuit Judge
Margaret Schreiber did not allow full presentation of arguments in support of the
motion to accord the full right to be heard according to law, disregarded the

attorneys extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Judge Holcomb.

69.  Otero and Rodriguez did file a motion for rehearing, which was denied by Judge Schreiber. They appealed to the Florida Fifth District Court of Appeal the order denying their motion for rehearing (Case No. 5D15-1124), the appeal was dismissed for lack of jurisdiction because it was untimely. Exhibit 9.  Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale, and appealed one order denying their motion to cancel the sale (Case No. 5D16-1551), the appeal was dismissed for lack of jurisdiction because the issue on appeal became moot. Exhibit 10.

70.   Otero and Rodriguez filed a motion to vacate void judgment pursuant to Florida Rule of Civil Procedure 1.540 (b) (4). The motion asserted that because the (Plaintiff) Trust did not exist when the complaint was filed, jurisdiction over the dispute was never conferred on the court, the February 20, 2014 complaint was void ab initio, and the final judgment is a legal nullity. On June 25, 2018 the court held hearing on the motion. Although Circuit Judge Bob P. LeBlanc did not explain its reasoning in the June 25, 2018 order denying the motion (Exhibit 11), the transcript of the hearing show that he denied the motion on res judicata grounds. LeBlanc disregarded the law, evidence, established precedent, and failed to uphold the integrity of the judiciary.

71.  The order denying the rule 1.540 (b) (4) motion to vacate void judgment was appealed. After the appeal was fully brief, on January 22, 2019 the Florida

Fifth District Court of Appeal three-judge panel assigned to Case No. 5D18-2103 filed a Per Curiam Affirmed (PCA) without written opinion. Exhibit 12. On the same day the panel filed an order to show cause. Exhibit 13. The PCA indicate the panel agreed with LeBlanc's denial of the motion to vacate void judgment on res judicata grounds. The order to show cause indicate the panel applied the law of the case doctrine. Otero and Rodriguez filed a response to the order to show cause and on March 8, 2019 the panel filed an order prohibiting further pro se filings attacking the September 10, 2014 final judgment. Exhibit 14.

72.    On July 16, 2019, Otero and Rodriguez filed a motion on court's subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.140 (h) (2). The motion asserted the existence of the plaintiff is required to invoke the court's subject matter jurisdiction, the foreclosure action was brought on behalf of the non-existent (Plaintiff) Trust, therefore, the February 20, 2014 complaint of foreclosure was not a proper pleading to invoke the court's power to hear and determined.

73.    To schedule a hearing on the motion Otero and Rodriguez initiated the mandatory meeting and confer process as established in the Florida Ninth Judicial Circuit Court Administrative Order No. 2012-03. On August 9, 2019 Circuit Judge Lisa T. Munyon stop the hearing scheduling process and entered an order denying the uncontested motion based upon the doctrine of the law of the case. Exhibit 22. Munyon did not allow a hearing to accord the full right to be heard according to law. Procedural due process requires at least for the government to afford the

person a neutral decision maker and that the decision be made based on the record. On August 9, 2019 Munyon deliberately disregarded:

A. An action may not be maintained in the name of a plaintiff who is not a natural or an artificial person having legal entity to sue or be sued. 67 Corpus Juris Secundum (Parties), page 896, paragraph 4. The Bank of New York Mellon is proceeding under a false identity and brought the foreclosure action on behalf of the non-existent securitized trust. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

B. In the Circuit Court the Bank ofNew York Mellon, Shellpoint and Andrea R. Tromberg cannot and did not present even a scintilla of evidence to demonstrate that the (Plaintiff) securitized trust was created in 2004. A consent judgment is a judicial approved contract. On September 10, 2014, Otero relying on the attorney's Sunny L. Hillary erroneous legal advice agreed to the terms of the contract, a contract with a none-existent entity is nullity.

The attorneys settled the foreclosure case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court and the right to fair trial.

C. The March 8, 2015 hearing transcript show that Circuit Judge Margaret Schreiber did not allow full presentation of arguments in support of the rule 1.540 (b) (3) motion to vacate judgment to accord the full right to be heard according to

law. Schreiber disregarded the attorneys' extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Circuit Judge Charles Holcomb.

D.  Circuit Judge Bob P. LeBlanc June 25, 2018 ruling was arbitrary. The hearing transcript makes clear that no evidentiary hearing was held on June 25, 2018. At the hearing, LeBlanc disregarded the law, evidence and establish precedent, he tolerated the fraud and failed to uphold the integrity of the judiciary.

E.  The Fifth District Court of Appeal March 8, 2019 Per Curiam Opinion prohibiting pro se filings was arbitrary. The three-judge panel decision was based upon the doctrine of the law of the case and res judicata. The appeals on Case No. 5D15-1124 and Case No. 5D16-1551 were dismissed for lack of jurisdiction. By its nature, an order dismissing an appeal signifies that the court did not reach the merits. Dismissals of appeals generally do not establish the law of the case. Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved.

F.  Federal Courts and the Supreme Court of Florida has recognized that the law of the case, res judicata and collateral estoppel will not be invoked to bar relief where its application would result in a manifest injustice.

G.  Due process does not permit fraud on the court to deprive any person of property.

74.   There was no trial held on September 10, 2014. After the fraud came to light it is evident that Otero and Rodriguez are entitled to a fair trial. Munyon's August 9, 2019 ruling was arbitrary. Disregard of the law, evidence and established precedent, tolerate fraud court and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. Munyon deprived Otero and Rodriguez of their constitutional right to seek judicial relief for their injury, right to a neutral arbiter, and right to fair trial. What Munyon did was beyond the pale of anything that could sensibly be called a judicial act. The wrongful conduct harmed the judicial system and it also harmed Otero and Rodriguez, they were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. Munyon put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO FLORIDA
## NINTH JUDICIAL CIRCUIT COURT JUDGE CHAD K. ALVARO

75. Procedural due process is required by the Due Process Clauses of the
Fifth and Fourteenth Amendments to the United States Constitution. Procedural
due process requires at least for the government to afford the person a neutral
decision maker and that the decision be made based on the record. A neutral arbiter
is the linchpin of due process and the foundation upon which the system of justice
is built. Due process does not permit fraud on the court. A biased court also
violates constitutional due process guarantees by tolerating that fraud. Title 42 of
the United States Code Section 1983 provides an individual the right to sue state
government employees and others acting "under color of state law" for civil rights
violations. The plain language of § 1983 contemplates a declaratory judgment
against judicial officers in their official capacities.

76. Plaintiffs Otero and Rodriguez bring this suit against Defendant Chad K.
Alvaro ("Alvaro") in his capacity as state judge. As the arbiter of the law, the
Court is charged with ensuring the American people the promise of equal justice
under law and, thereby, also functions as guardian and interpreter of the
Constitution. The disregard of the law, evidence, established precedent, and failure
to uphold the integrity of the judiciary is not the type of act normally performed
only by judges. Alvaro's failure to act as a neutral arbiter violated Otero and
Rodriguez right of due process under the Fifth and Fourteenth Amendment to the

United States Constitution. In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that Alvaro wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

77. On February 11, 2020, Otero and Rodriguez initiated an independent action in the Florida Ninth Judicial Circuit Court against the Bank of New York Mellon ("BONYM") and NewRez LLC. d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), Case No. 2020-CA-1526. The first and second causes of action allege misrepresentations, foreclosure fraud, and fraud on the court against BONYM and NewRez, and the third cause of action allege extrinsic fraud against attorneys Omar J. Arcia and Sunny L. Hillary. The court held a telephonic remote appearances hearing on Arcia's motion to dismiss on May 18, 2020. After the parties presented oral arguments Judge Alvaro took the motion under advisement. On the same day Alvaro entered and order dismissing the extrinsic fraud claim against Arcia and Hillary based solely on jurisdictional grounds and granted Otero and Rodriguez leave of court to file an amended pleading stating claims against defendants other than Arcia and Hillary. Exhibit 23.

78. On May 25, 2020, Otero and Rodriguez filed the amended complaint. The first and second causes of action allege misrepresentations, foreclosure fraud, and fraud on the court against BONYM and NewRez, and the third cause of action allege misrepresentations and fraud on the court against their legal counsel Andrea

R. Tromberg ("Tromberg"). In the amended complaint Otero and Rodriguez do not seek to set aside the final judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that BONYM, Shellpoint and Tromberg wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

79.  On June 3, 2020, BONYM and Shellpoint filed a joint motion to dismiss the amended complaint and asserted failure to state a cause of action and collateral estoppel as defense. On August 12, 2020 Tromberg filed a motion to dismiss the amended complaint. On September 12, 2020, Otero and Rodriguez filed a response in opposition to BONYM and Shellpoint motion to dismiss. The response asserted; (1) the amended complaint states claims upon which relief may be granted therefore the motion to dismiss must be denied, (2) The issue preclusion doctrine on which defendants' primary relies does not bar a full airing of the plaintiffs' claims, the record reflects that there was no clear-cut former adjudication on the merits and the matters remain essentially unresolved due to the judges erroneous decisions.

80.  On September 21, 2020, the Court held hearing on BONYM and Shellpoint Motion to Dismiss Amended Complaint. On October 2, 2020, Alvaro entered an order (Exhibit ) granting the motion with prejudice and ruled:

> "The Court finds that Plaintiffs' claims constitute impermissible collateral attacks on the underlying foreclosure judgment and Plaintiffs are therefore collaterally estopped from raising those claims in this case- the issue of whether Newrez, LLC had standing was an issue that would have necessarily

been raised in the foreclosure case, and the Plaintiffs waived any objections to standing by consenting to entry of a Final Judgment in that case. All the elements of collateral estoppel are present."

81.   The right to seek judicial redress for grievances is grounded in several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause. In some ways, this breadth of origin has afforded the right of access to courts a measure of legitimacy insofar as its constitutionality is well-established. Procedural due process requires at least for the government to afford the person a neutral decision maker and that the decision be made based on the record. On October 1, 2020 Alvaro deliberately disregarded:

A.   In the foreclosure case the Bank of New York Mellon is proceeding under a false identity and brought the action on behalf of the non-existent securitized trust. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter. See Paragraph 20 above.

B.   The attorneys' settled the foreclosure case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court.

C.   The March 8, 2015 hearing transcript show that Circuit Judge Margaret Schreiber did not allow full presentation of arguments in support of the rule 1.540 (b) (3) motion to vacate judgment to accord the full right to be heard according to

law, disregarded the attorneys extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Circuit Judge Charles Holcomb.

D.   Circuit Judge Bob P. LeBlanc June 25, 2018 decision was arbitrary. The June 25, 2018 hearing transcript show LeBlanc did not allow an evidentiary hearing. LeBlanc disregarded the law, evidence, establish precedent and failed to uphold the integrity of the judiciary.

E.   Federal Courts and the Supreme Court of Florida has recognized that the law of the case, res judicata and collateral estoppel will not be invoked to bar relief where its application would result in a manifest injustice.

82.   Alvaro's October 1, 2020 ruling was arbitrary. Disregard of the law, evidence and established precedent, tolerate fraud on the court and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. Alvaro deprived Otero and Rodriguez of the right to seek judicial relief for their injury, right to a neutral arbiter, and right to fair trial. What Alvaro did was beyond the pale of anything that could sensibly be called a judicial act. The wrongful conduct harmed the judicial system and it also harmed Otero and Rodriguez.

## FACTUAL ALLEGATIONS RELATING TO FLORIDA FIFTH DISTRICT COURT OF APPEAL JUDGE RICHARD B. ORFINGER

83.  Title 42 of the United States Code Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations. The plain language of § 1983 contemplates a declaratory judgment against judicial officers in their official capacities. The right to seek judicial redress for grievances is grounded in several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV and the First Amendment's Petition Clause. In some ways, this breadth of origin has afforded the right of access to courts a measure of legitimacy insofar as its constitutionality is well-established. Judicial access must be adequate, effective, and meaningful.

84.  Plaintiffs Otero and Rodriguez bring this suit against Defendant Richard B. Orfinger ("Orfinger") in his capacity as state judge. As the arbiter of the law, the Court is charged with ensuring the American people the promise of equal justice under law and, thereby, also functions as guardian and interpreter of the Constitution. A neutral arbiter is the linchpin of due process and the foundation upon which the system of justice is built. The right to sue and defend in the courts is one of the highest and most essential privileges of citizenship. The Sixth Amendment to the United States Constitution, in addition to guaranteeing the right to retained or appointed counsel, also guarantees a defendant the right to

represent himself. A judge cannot act in disregard of the evidence or ignore established precedent. Due process does not permit fraud on the court to deprive any person of property. A biased court also violates constitutional due process guarantees by tolerating that fraud. . In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that Orfinger wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

85. On September 10, 2014, Florida Ninth Judicial Circuit Court Judge Theothis Bronson entered a final judgment of foreclosure in favor of the (Plaintiff) Trust. Exhibit 5. The time for filing an appeal expired. Several weeks after the judgment was entered the fraud came to light. The Plaintiff existence is required to invoke the Court 's subject matter jurisdiction. In foreclosure cases where the Plaintiff is a securitized Trust, there is a growing movement among courts to require the Trust to establish the unbroken chain of transfers, deliveries and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and finally to the Trust. Federal law provides for the creation of mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of transformation of non-tradable assets into tradable securities. A securitized loan is owned by a Trust established by the issuer of securitized bonds backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of mortgage

backed securities ("MBS") and controls what can and can't be done with the trust.
The PSA will state, among other things, the exact steps needed to create a trust.
The servicer is responsible for servicing MBS mortgage loans for the MBS trusts
that own the mortgage loans. In judicial proceedings the trustee is only a nominal
or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates
Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed
Securities. The "2004-SD2" designation indicates that this particular securitized
trust was created, registered with the United States Securities & Exchange
Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of
such trusts created in 2004. The 2014 foreclosure action was brought on behalf of
an asset-backed trust. Asset-Backed Securities are created from the pooling of non-
mortgage assets. These securities are backed by credit card receivables, student
loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a
mortgage-backed security, except that the underlying securities are not mortgage-
based. Securities backed by first mortgages are considered a separate investment
category. First mortgages go into mortgage-backed security trust, not into asset-
backed security trust. Only mortgage-backed securities are secured by mortgages,
and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be
registered. The registration statements, the PSA and Prospectuses become public
shortly after filing with the SEC. If filed by U.S. domestic companies, these
documents are available on the "SEC EDGAR" database accessible at
www.sec.gov. In the October 22, 2014 Certified Attestation the SEC certified that

"The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM and BANA colluded with an officer of the court, attorney Andrea R. Tromberg and perpetrated fraud on the court to obtained the September 10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

86.   On April 2, 2015, Otero and Rodriguez appealed the post-judgment non-final order which denied the Rule 1.540 (b) (3) Motion to Vacate Judgment, Case No. 5D15-1124. The Florida Fifth District Court Appeal ("5DCA") dismissed the appeal for lack of jurisdiction because it was untimely. Exhibit 9. Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale, and appealed one post-judgment non-final order denying their Motion to Cancel Sale, Case No. 5D16-1551. The 5DCA dismissed the appeal for lack of jurisdiction because the issue became moot. Exhibit 10.

87.   On February 11, 2018, Otero and Rodriguez filed a Motion to Vacate Void Judgment pursuant to Florida Rule of Civil Procedure 1.540 (b) (4). The motion asserted; (1) the judgment is void because it was procured by fraud. the Bank of New York Mellon is proceeding under a false identity, he cannot be

the trustee for a non-existent (entity) securitized trust. At the September 10, 2014 final judgment hearing Defendant Otero, relying on the attorney's Sunny L. Hillary erroneous legal advice agreed to the terms of the last minute oral agreement. A consent judgment is a judicial approved contract, on September 10, 2014 Otero entered into a contract with a non-existent trust, a contract with a none-existent entity is nullity, and (2) the judgment is also void because Defendant Pura Rodriguez consent did not exist at the time the Court approved the last minute oral agreement and promulgated it as a judgment. The attorneys' extrinsic fraud deprived Rodriguez of an opportunity to present her case in court and the right to fair trial. On June 25, 2018 Circuit Judge Bob LeBlanc denied the Motion to Vacate Void Judgment. Exhibit 11.

88.   The events preceding the filing of the February 11, 2018 Motion to Vacate Void Judgment are described more fully above. Plaintiffs reincorporate herein by reference the preceding paragraphs 17 through 23.

89.   Because the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg cannot and did not present even a scintilla of evidence to demonstrate the alleged securitized trust was created and is the legitimate owner of the subject mortgage and cannot and did not present even a scintilla of evidence to demonstrate the attorneys had Rodriguez consent to settled the foreclosure case, on June 26, 2018, Otero and Rodriguez appealed the post-judgment non-final order denying the February 11, 2018 Motion to Vacate Void Judgment, Case No. 5D18-2103. After the appeal was fully brief, the 5DCA three-judge panel Orfinger,

Cohen and Wallis filed a Per Curiam affirmed (PCA) without written opinion. Exhibit 12. On the same day the panel filed an Order to Show Cause (Exhibit 13) and ordered:

> Appellants shall file with this Court and show cause, within thirty days of the date of this order, why Appellants should not be prohibited from filing any appeal, petition, pleading or motion pertaining to the final judgment rendered in Case No. 2014-CA-1836 unless reviewed and signed by an attorney licensed to practice in the State of Florida. See State v. Spencer, 751 So. 2d 47 (Fla. 1999).

Otero and Rodriguez filed a response to the order to show cause and on March 11, 2019 the panel filed a Per Curiam Opinion prohibiting further pro se filings attacking the September 10, 2014 judgment. Exhibit 14.

90. On July 16, 2019, Otero and Rodriguez filed a motion on court's subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.140 (h) (2). The motion asserted the existence of the plaintiff is required to invoke the court's subject matter jurisdiction, the foreclosure action was brought on behalf of the non-existent (Plaintiff) Trust, therefore, the February 20, 2014 complaint of foreclosure was not a proper pleading to invoke the court's power to hear and determined. To schedule a hearing on the motion Otero and Rodriguez initiated the mandatory meeting and confer process as established in the Ninth Judicial Circuit in and for Orange County Florida Administrative Order No. 2012-03. On August 9, 2019 Circuit Judge Lisa T. Munyon stop the hearing scheduling process and entered an

order denying the uncontested motion based upon the doctrine of law of the case. Exhibit 22.

91.   On February 11, 2020, Otero and Rodriguez initiated an independent action in the Florida Ninth Judicial Circuit Court against the Bank of New York Mellon ("BONYM"), NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoit") and attorneys Omar J. Arcia and Sunny L. Hillary, Case No. 2020-CA-1526. The court held a telephonic remote appearances hearing on Arcia's motion to dismiss on May 18, 2020. After the parties presented oral arguments Circuit Judge Chad K. Alvaro ("Alvaro") took the motion under advisement. On the same day Alvaro entered and order dismissing the claims against Arcia and Hillary based solely on jurisdictional grounds and granted Otero and Rodriguez leave of court to file an amended pleading stating claims against defendants other than Arcia and Hillary. Exhibit 23.

92.   On May 25, 2020, Otero and Rodriguez filed the amended complaint. The third cause of action allege misrepresentations and fraud on the court against attorney Andrea R. Tromberg. In the amended complaint Otero and Rodriguez do not seek to set aside the final judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party. At the September 10, 2014 final judgment hearing, when Circuit Judge Theothis Bronson approved the last minute oral agreement he

was unaware that BANA and the trustee of record, BONYM, did not have authority or power to initiate the foreclosure process on behalf of Cwabs Inc. Asset Backed Certificates Series 2004- SD2 (the "Trust"). Judge Bronson had no opportunity to verify that Defendant Pura Rodriguez understood the terms of the judicially approved contract (consent judgment) because she was not present. When Bronson signed the September 10, 2014 final judgment he was unaware that the attorneys initiated settlement negotiations, secretly agreed to act together in a way in which Otero and Rodriguez viable defenses would not be presented to the court and settled the case without Rodriguez knowledge and consent depriving Rodriguez of the opportunity to present her case in court and the right to fair trial.

93.  On September 21, 2020, the Court held hearing on BONYM and Shellpoint joint Motion to Dismiss Amended Complaint. On October 2, 2020, Circuit Chad K. Judge Alvaro entered an order granting the motion with prejudice based upon the doctrine of collateral estoppel. Exhibit 24. Otero and Rodriguez filed a notice of appeal. Exhibit 25. The 5DCA denied the request to review Judge Alvaro's decision. By letter dated 6 October 2020 5DCA Deputy Clerk Sheila N. Stanbro notified that "all pro se filings are to be rejected unless filed by a member in good standing of the Florida Bar. Exhibit 26. On November 26, 2020, Otero and Rodriguez filed a Petition for Writ of Mandamus. By letter dated 6 November 2020 Deputy Clerk Sheila N. Stanbro notified that "no new petition will be established". Exhibit 27.

94. In the January 22. 2019 order to show cause (Exhibit 13) Orfinger stated:

> Appellants, Israel Otero and Pura Rodriguez, continue to raise the same claim, which has been considered on the merits, disposed of by the trial court, and reviewed in this court on multiple occasions."

In the March 11, 2019 Per Curiam Opinion (Exhibit 14) Orfinger ruled:

> Due to Appellants' apparent abuse of the legal process by their repetitive, malicious, or frivolous pro se filings attacking the judgment in Orange County Circuit Court Case Number 2014-CA-1836….. we conclude that they are abusing the judicial process and should be barred from further pro se filings. Any future filings regarding the referenced case will be summarily rejected by the Clerk, unless filed by a member in good standing of The Florida Bar.

The order to show cause indicate Orfinger agreed with Circuit Judge Bob LeBlanc denial of the motion to vacate void judgment on res judicata grounds and indicate Orfinger applied the law of the case doctrine. Procedural due process requires at least for the government to afford the person a neutral decision maker and that the decision be made based on the record. On March 11, 2019 Orfinger deliberately disregarded:

A. In the Circuit Court and in the Fifth District Court of Appeal the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg cannot and did not present even a scintilla of evidence to demonstrate that the (Plaintiff) securitized trust was created in 2004. A consent judgment is a judicial approved contract. On September 10, 2014, Otero relying on the attorney's Sunny L. Hillary erroneous legal advice

agreed to the terms of the contract, a contract with a none-existent entity is nullity.

B.  The attorneys settled the foreclosure case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court and the right to fair trial.

C.  On March 8, 2015, Circuit Judge Margaret Schreiber did not allow full presentation of arguments in support of the rule 1.540 (b) (3) motion to vacate judgment to accord the full right to be heard according to law, disregarded the attorneys extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Circuit Judge Charles Holcomb.

D.  The appeals on Florida Fifth District Court of Appeal Case No. 5D15-1124 and Case No. 5D16-1551 were dismissed for lack of jurisdiction. By its nature, an order dismissing an appeal signifies that the court did not reach the merits. Dismissals of appeals generally do not establish the law of the case.

E.  Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved.

F.  Circuit Judge Bob LeBlanc June 25, 2018 decision was arbitrary and his order entered without explanation was not sufficiently specific to indicate that he ruled on the merits. The Supreme Court of Florida has recognized that the law of the-case doctrine was meant to apply to matters litigated to finality, not to matters that remain essentially unresolved due to the erroneous ruling of a lower court.

G.  Federal Courts and the Supreme Court of Florida has recognized that the law of the case, res judicata and collateral estoppel will not be invoked to bar relief

where its application would result in a manifest injustice.

95.  The right to sue and defend in the courts is one of the highest and most essential privileges of citizenship. The Sixth Amendment to the United States Constitution, in addition to guaranteeing the right to retained or appointed counsel, also guarantees a defendant the right to represent himself. Article I, Section 21 of the Florida Constitution establishes the fundamental right to self-representation and is self-executing. Its language is mandatory and all-encompassing:

> "The courts shall be open to every person for redress of any injury,
> and justice shall be administered without sale, denial or delay."

Revision 7 to Article V of the Florida Constitution makes no changes to the constitutional principles pertinent to due process, access to courts, open courts, and self-representation. Litigants have the right to represent themselves in any matter in any court. The command that the courts "be open to every person" means more than that the business hours are from nine to five. Yet when confronted with practical problems - a poor person, with few assets and no funds to pay an attorney - the court have ignored the plain language of the section. Orfinger Knew Otero and Rodriguez have few assets and no funds to pay an attorney and by ruling that "They abuse the legal process by their repetitive, malicious, or frivolous pro se filings attacking the judgment in Orange County Circuit Court Case Number 2014-CA-1836" and prohibiting further pro se filings; (1) no attorney will take the case because of the fear of sanctions, (2) the circuit court will dismiss any lawsuit against BONYM, Shellpoit and Andrea Tromberg, (3) the Fifth District Court of

Appeal will reject any appeal, petition, pleading or motion, (4) the circuit court will enforced the September 10, 2014 final judgment of foreclosure entered in favor of the non-existent securitized trust and (5) BONYM will buy Otero and Rodriguez house at the foreclosure auction.

96.   There was no trial held on September 10, 2014. After the fraud came to light it is evident that Otero and Rodriguez are entitled to a fair trial. Orfinger's March 8, 2019 ruling was arbitrary. By tolerating fraud on the court he failed to uphold the integrity of the judiciary and deprived Otero and Rodriguez of their constitutional rights to; access to courts, seek judicial relief for their injury, self-representation, a neutral arbiter, and fair trial. Disregard of the law, evidence and established precedent, tolerate fraud on the court and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. What Orfinger did on March 8, 2019 was beyond the pale of anything that could sensibly be called a judicial act. The wrongful conduct harmed Otero and Rodriguez. As a result they were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury.

Orfinger put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO FLORIDA
## FIFTH DISTRICT COURT OF APPEAL JUDGE JAY P. COHEN

97.  Title 42 of the United States Code Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations. The plain language of § 1983 contemplates a declaratory judgment against judicial officers in their official capacities. The right to seek judicial redress for grievances is grounded in several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV and the First Amendment's Petition Clause. In some ways, this breadth of origin has afforded the right of access to courts a measure of legitimacy insofar as its constitutionality is well-established. Judicial access must be adequate, effective, and meaningful.

98.  Plaintiffs Otero and Rodriguez bring this suit against Defendant Jay P. Cohen ("Cohen") in his capacity as state judge. As the arbiter of the law, the Court is charged with ensuring the American people the promise of equal justice under law and, thereby, also functions as guardian and interpreter of the Constitution. A neutral arbiter is the linchpin of due process and the foundation upon which the system of justice is built. The right to sue and defend in the courts

is one of the highest and most essential privileges of citizenship. The Sixth

Amendment to the United States Constitution, in addition to guaranteeing the

right to retained or appointed counsel, also guarantees a defendant the right to

represent himself. A judge cannot act in disregard of the evidence or ignore

established precedent. Due process does not permit fraud on the court to deprive

any person of property. A biased court also violates constitutional due process

guarantees by tolerating that fraud. . In this action Plaintiffs Otero and Rodriguez

do not seek to set aside the judgment of foreclosure and does not allege that they

have been harmed by legal errors made by the court on September 10, 2014.

Rather, they allege that Cohen wrongful conduct has caused them harm, an

allegedly illegal act or omission by an adverse party.

    99.   On September 10, 2014, Florida Ninth Judicial Circuit Court Judge

Theothis Bronson entered a final judgment of foreclosure in favor of the (Plaintiff)

Trust. Exhibit 5. The time for filing an appeal expired. Several weeks after the

judgment was entered the fraud came to light. The Plaintiff existence is required to

invoke the Court 's subject matter jurisdiction. In foreclosure cases where the

Plaintiff is a securitized Trust, there is a growing movement among courts to

require the Trust to establish the unbroken chain of transfers, deliveries and

acceptances of the mortgage note from the Originator to the Sponsor to the

Depositor and finally to the Trust. Federal law provides for the creation of

mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of

transformation of non-tradable assets into tradable securities. A securitized loan is

owned by a Trust established by the issuer of securitized bonds backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of mortgage backed securities ("MBS") and controls what can and can't be done with the trust. The PSA will state, among other things, the exact steps needed to create a trust. The servicer is responsible for servicing MBS mortgage loans for the MBS trusts that own the mortgage loans. In judicial proceedings the trustee is only a nominal or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public

shortly after filing with the SEC. If filed by U.S. domestic companies, these documents are available on the "SEC EDGAR" database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation the SEC certified that "The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM and BANA colluded with an officer of the court, attorney Andrea R. Tromberg and perpetrated fraud on the court to obtained the September 10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

100.   On April 2, 2015, Otero and Rodriguez appealed the post-judgment non-final order which denied the Rule 1.540 (b) (3) Motion to Vacate Judgment, Case No. 5D15-1124. The Florida Fifth District Court Appeal ("5DCA") dismissed the appeal for lack of jurisdiction because it was untimely. Exhibit 9. Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale, and appealed one post-judgment non-final order denying their Motion to Cancel Sale, Case No. 5D16-1551. The 5DCA dismissed the appeal for lack of jurisdiction because the issue became moot. Exhibit 10.

101.  On February 11, 2018, Otero and Rodriguez filed a Motion to Vacate

Void Judgment pursuant to Florida Rule of Civil Procedure 1.540 (b) (4). The

motion asserted; (1) the judgment is void because it was procured by fraud.

the Bank of New York Mellon is proceeding under a false identity, he cannot be

the trustee for a non-existent (entity) securitized trust. At the September 10, 2014

final judgment hearing Defendant Otero, relying on the attorney's Sunny L. Hillary

erroneous legal advice agreed to the terms of the last minute oral agreement.

A consent judgment is a judicial approved contract, on September 10, 2014 Otero

entered into a contract with a non-existent trust, a contract with a none-existent

entity is nullity, and (2) the judgment is also void because Defendant Pura

Rodriguez consent did not exist at the time the Court approved the last minute oral

agreement and promulgated it as a judgment. The attorneys' extrinsic fraud

deprived Rodriguez of an opportunity to present her case in court and the right to

fair trial. On June 25, 2018 Circuit Judge Bob LeBlanc denied the Motion to

Vacate Void Judgment. Exhibit 11.

102.  The events preceding the filing of the February 11, 2018 Motion to

Vacate Void Judgment are described more fully above. Plaintiffs reincorporate

herein by reference the preceding paragraphs 17 through 23.

103.  Because the Bank of New York Mellon, Shellpoint and Andrea R.

Tromberg cannot and did not present even a scintilla of evidence to demonstrate

the alleged securitized trust was created and is the legitimate owner of the subject

mortgage and cannot and did not present even a scintilla of evidence to

demonstrate the attorneys had Rodriguez consent to settled the foreclosure case, on June 26, 2018, Otero and Rodriguez appealed the post-judgment non-final order denying the February 11, 2018 Motion to Vacate Void Judgment, Case No. 5D18-2103. After the appeal was fully brief, the 5DCA three-judge panel Orfinger, Cohen and Wallis filed a Per Curiam affirmed (PCA) without written opinion. Exhibit 12. On the same day the panel filed an Order to Show Cause (Exhibit 13) and ordered:

> Appellants shall file with this Court and show cause, within thirty days of the date of this order, why Appellants should not be prohibited from filing any appeal, petition, pleading or motion pertaining to the final judgment rendered in Case No. 2014-CA-1836 unless reviewed and signed by an attorney licensed to practice in the State of Florida. See State v. Spencer, 751 So. 2d 47 (Fla. 1999).

Otero and Rodriguez filed a response to the order to show cause and on March 11, 2019 the panel filed a Per Curiam Opinion prohibiting further pro se filings attacking the September 10, 2014 judgment. Exhibit 14.

104.   On July 16, 2019, Otero and Rodriguez filed a motion on court's subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.140 (h) (2). The motion asserted the existence of the plaintiff is required to invoke the court's subject matter jurisdiction, the foreclosure action was brought on behalf of the non-existent (Plaintiff) Trust, therefore, the February 20, 2014 complaint of foreclosure was not a proper pleading to invoke the court's power to hear and determined. To schedule a hearing on the motion Otero and Rodriguez initiated the

mandatory meeting and confer process as established in the Ninth Judicial Circuit in and for Orange County Florida Administrative Order No. 2012-03. On August 9, 2019 Circuit Judge Lisa T. Munyon stop the hearing scheduling process and entered an order denying the uncontested motion based upon the doctrine of law of the case. Exhibit 22.

105.  On February 11, 2020, Otero and Rodriguez initiated an independent action in the Florida Ninth Judicial Circuit Court against the Bank of New York Mellon ("BONYM"), NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoit") and attorneys Omar J. Arcia and Sunny L. Hillary, Case No. 2020-CA-1526. The court held a telephonic remote appearances hearing on Arcia's motion to dismiss on May 18, 2020. After the parties presented oral arguments Circuit Judge Chad K. Alvaro ("Alvaro") took the motion under advisement. On the same day Alvaro entered and order dismissing the claims against Arcia and Hillary based solely on jurisdictional grounds and granted Otero and Rodriguez leave of court to file an amended pleading stating claims against defendants other than Arcia and Hillary. Exhibit 23.

106.  On May 25, 2020, Otero and Rodriguez filed the amended complaint. The third cause of action allege misrepresentations and fraud on the court against attorney Andrea R. Tromberg. In the amended complaint Otero and Rodriguez do not seek to set aside the final judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege the Bank of New York Mellon, Shellpoint and

Andrea R. Tromberg wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party. At the September 10, 2014 final judgment hearing, when Circuit Judge Theothis Bronson approved the last minute oral agreement he was unaware that BANA and the trustee of record, BONYM, did not have authority or power to initiate the foreclosure process on behalf of Cwabs Inc. Asset Backed Certificates Series 2004- SD2 (the "Trust"). Judge Bronson had no opportunity to verify that Defendant Pura Rodriguez understood the terms of the judicially approved contract (consent judgment) because she was not present. When Bronson signed the September 10, 2014 final judgment he was unaware that the attorneys initiated settlement negotiations, secretly agreed to act together in a way in which Otero and Rodriguez viable defenses would not be presented to the court and settled the case without Rodriguez knowledge and consent depriving Rodriguez of the opportunity to present her case in court and the right to fair trial.

107.  On September 21, 2020, the Court held hearing on BONYM and Shellpoint joint Motion to Dismiss Amended Complaint. On October 2, 2020, Circuit Chad K. Judge Alvaro entered an order granting the motion with prejudice based upon the doctrine of collateral estoppel. Exhibit 24. Otero and Rodriguez filed a notice of appeal. Exhibit 25. The 5DCA denied the request to review Judge Alvaro's decision. By letter dated 6 October 2020 5DCA Deputy Clerk Sheila N. Stanbro notified that "all pro se filings are to be rejected unless filed by a member in good standing of the Florida Bar. Exhibt 26.  On November 26, 2020, Otero and Rodriguez filed a Petition for Writ of Mandamus. By letter dated 6 November

2020 Deputy Clerk Sheila N. Stanbro notified that "no new petition will be established". Exhibit 27.

108.   In the January 22, 2019 order to show cause (Exhibit 13) Cohen stated:

> Appellants, Israel Otero and Pura Rodriguez, continue to raise the same claim, which has been considered on the merits, disposed of by the trial court, and reviewed in this court on multiple occasions."

In the March 11, 2019 Per Curiam Opinion (Exhibit 14) Cohen ruled:

> Due to Appellants' apparent abuse of the legal process by their repetitive, malicious, or frivolous pro se filings attacking the judgment in Orange County Circuit Court Case Number 2014-CA-1836….. we conclude that they are abusing the judicial process and should be barred from further pro se filings. Any future filings regarding the referenced case will be summarily rejected by the Clerk, unless filed by a member in good standing of The Florida Bar.

The order to show cause indicate Cohen agreed with Circuit Judge Bob LeBlanc denial of the motion to vacate void judgment on res judicata grounds and indicate Cohen applied the law of the case doctrine. Procedural due process requires at least for the government to afford the person a neutral decision maker and that the decision be made based on the record. On March 11, 2019 Cohen deliberately disregarded:

A.   In the Circuit Court and in the Fifth District Court of Appeal the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg cannot and did not present even a scintilla of evidence to demonstrate that the (Plaintiff) securitized trust was

created in 2004. A consent judgment is a judicial approved contract. On September 10, 2014, Otero relying on the attorney's Sunny L. Hillary erroneous legal advice agreed to the terms of the contract, a contract with a none-existent entity is nullity.

B. The attorneys settled the foreclosure case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court and the right to fair trial.

C. On March 8, 2015, Circuit Judge Margaret Schreiber did not allow full presentation of arguments in support of the rule 1.540 (b) (3) motion to vacate judgment to accord the full right to be heard according to law, disregarded the attorneys extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Circuit Judge Charles Holcomb.

D. The appeals on Florida Fifth District Court of Appeal Case No. 5D15-1124 and Case No. 5D16-1551 were dismissed for lack of jurisdiction. By its nature, an order dismissing an appeal signifies that the court did not reach the merits. Dismissals of appeals generally do not establish the law of the case.

E. Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved.

F. Circuit Judge Bob LeBlanc June 25, 2018 decision was arbitrary and his order entered without explanation was not sufficiently specific to indicate that he ruled on the merits. The Supreme Court of Florida has recognized that the law of the-case doctrine was meant to apply to matters litigated to finality, not to matters that remain essentially unresolved due to the erroneous ruling of a lower court.

G.  Federal Courts and the Supreme Court of Florida has recognized that the law of the case, res judicata and collateral estoppel will not be invoked to bar relief where its application would result in a manifest injustice

109.   Due process does not permit fraud on the court to deprive any person of property. The fact that Otero and Rodriguez owed money on their house was not the point. They would gladly resume payments on the mortgage. But the trustee bank doesn't own the loan because a trustee is only a nominal or formal party suing on behalf of the trust, the investors don't own it because the securitization trust was never created and the original lender, Republic Bank, no longer exists. So whom do they pay?

110.   The right to sue and defend in the courts is one of the highest and most essential privileges of citizenship. The Sixth Amendment to the United States Constitution, in addition to guaranteeing the right to retained or appointed counsel, also guarantees a defendant the right to represent himself. Article I, Section 21 of the Florida Constitution establishes the fundamental right to self-representation and is self-executing. Its language is mandatory and all-encompassing:

> The courts shall be open to every person for redress of any injury,
> and justice shall be administered without sale, denial or delay.

Revision 7 to Article V of the Florida Constitution makes no changes to the constitutional principles pertinent to due process, access to courts, open courts, and self-representation. Litigants have the right to represent themselves in any

matter in any court. The command that the courts "be open to every person" means more than that the business hours are from nine to five. Yet when confronted with practical problems - a poor person, with few assets and no funds to pay an attorney - the court have ignored the plain language of the section. Cohen Knew  Otero and Rodriguez have few assets and no funds to pay an attorney and by ruling that "They abuse the legal process by their repetitive, malicious, or frivolous pro se filings attacking the judgment in Orange County Circuit Court Case Number 2014-CA-1836" and prohibiting pro se filings; (1) no attorney will take the case because of the fear of sanctions, (2) the circuit court will dismiss any lawsuit against BONYM, Shellpoit and Andrea Tromberg, (3) the Florida Fifth District Court of Appeal will reject any appeal, petition, pleading or motion and (4) BONYM will buy Otero and Rodriguez house at the foreclosure auction.

111.   There was no trial held on September 10, 2014. After the fraud came to light it is evident that Otero and Rodriguez are entitled to a fair trial. Cohen's March 8, 2019 ruling was arbitrary. By tolerating fraud on the court he failed to uphold the integrity of the judiciary and deprived Otero and Rodriguez of their constitutional rights to; access to courts, seek judicial relief for their injury, self-representation, a neutral arbiter, and fair trial. Disregard of the law, evidence and established precedent, tolerate fraud on the court and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. What Cohen did on March 8, 2019 was beyond the pale of anything that could sensibly be called a judicial act. The wrongful conduct harmed Otero and Rodriguez.

They were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. Cohen put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

## FACTUAL ALLEGATIONS RELATING TO FLORIDA FIFTH DISTRICT COURT OF APPEAL JUDGE FREDERIC RAND WALLIS

112.  Title 42 of the United States Code Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations. The plain language of § 1983 contemplates a declaratory judgment against judicial officers in their official capacities. The right to seek judicial redress for grievances is grounded in several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV and the First Amendment's Petition Clause. In some ways, this breadth of origin has

afforded the right of access to courts a measure of legitimacy insofar as its constitutionality is well-established. Judicial access must be adequate, effective, and meaningful.

113. Plaintiffs Otero and Rodriguez bring this suit against Defendant Fredric Rand Wallis ("Wallis") in his capacity as state judge. As the arbiter of the law, the Court is charged with ensuring the American people the promise of equal justice under law and, thereby, also functions as guardian and interpreter of the Constitution. A neutral arbiter is the linchpin of due process and the foundation upon which the system of justice is built. The right to sue and defend in the courts is one of the highest and most essential privileges of citizenship. The Sixth Amendment to the United States Constitution, in addition to guaranteeing the right to retained or appointed counsel, also guarantees a defendant the right to represent himself. A judge cannot act in disregard of the evidence or ignore established precedent. Due process does not permit fraud on the court to deprive any person of property. A biased court also violates constitutional due process guarantees by tolerating that fraud. . In this action Plaintiffs Otero and Rodriguez do not seek to set aside the judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege that Wallis wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party.

114. On September 10, 2014, Florida Ninth Judicial Circuit Court Judge Theothis Bronson entered a final judgment of foreclosure in favor of the (Plaintiff)

Trust. Exhibit 5. The time for filing an appeal expired. Several weeks after the judgment was entered the fraud came to light. The Plaintiff existence is required to invoke the Court 's subject matter jurisdiction. In foreclosure cases where the Plaintiff is a securitized Trust, there is a growing movement among courts to require the Trust to establish the unbroken chain of transfers, deliveries and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and finally to the Trust. Federal law provides for the creation of mortgage-related securities, 15 U.S.C. §§ 77a–77aa. Securitization is the process of transformation of non-tradable assets into tradable securities. A securitized loan is owned by a Trust established by the issuer of securitized bonds backed the loan. The Pooling and Servicing Agreement ("PSA") is the contract that governs the relationship between the various parties in the securitization process of mortgage backed securities ("MBS") and controls what can and can't be done with the trust. The PSA will state, among other things, the exact steps needed to create a trust. The servicer is responsible for servicing MBS mortgage loans for the MBS trusts that own the mortgage loans. In judicial proceedings the trustee is only a nominal or formal party suing on behalf of the trust. Cwabs Inc. Asset Backed Certificates Series 2004- SD2 is a mortgage-industry jargon for Countrywide Assets Backed Securities. The "2004-SD2" designation indicates that this particular securitized trust was created, registered with the United States Securities & Exchange Commission ("SEC"), sold to investors in 2004, and was the SD2 in a series of such trusts created in 2004. The 2014 foreclosure action was brought on behalf of

an asset-backed trust. Asset-Backed Securities are created from the pooling of non-mortgage assets. These securities are backed by credit card receivables, student loans, auto loans, and home equity loans. [A]n asset-backed security is similar to a mortgage-backed security, except that the underlying securities are not mortgage-based. Securities backed by first mortgages are considered a separate investment category. First mortgages go into mortgage-backed security trust, not into asset-backed security trust. Only mortgage-backed securities are secured by mortgages, and therefore, property. Exhibit 6. In general, securities sold in the U.S. must be registered. The registration statements, the PSA and Prospectuses become public shortly after filing with the SEC. If filed by U.S. domestic companies, these documents are available on the "SEC EDGAR" database accessible at www.sec.gov. In the October 22, 2014 Certified Attestation the SEC certified that "The records and files do not disclose that any filing has been received in this commission under the name of CWABS Asset Backed Certificates Series 2004 SD-2". Exhibit 7. The SEC Attestation makes clear that there is no (PSA) agreement between depositor and the trust and the trustee and the servicer. BONYM and BANA colluded with an officer of the court, attorney Andrea R. Tromberg and perpetrated fraud on the court to obtained the September 10, 2014 final judgment of foreclosure. The alleged owner of the subject mortgage Cwabs Inc. Asset Backed Certificates Series 2004- SD2 was never created, the PSA, the trust and the certificates holders did not exist when the foreclosure complaint was filed and at no time thereafter.

115.  On April 2, 2015, Otero and Rodriguez appealed the post-judgment non-final order which denied the Rule 1.540 (b) (3) Motion to Vacate Judgment, Case No. 5D15-1124. The Florida Fifth District Court Appeal ("5DCA") dismissed the appeal for lack of jurisdiction because it was untimely. Exhibit 9. Otero and Rodriguez repeatedly objected to all efforts to conduct the foreclosure sale, and appealed one post-judgment non-final order denying their Motion to Cancel Sale, Case No. 5D16-1551. The 5DCA dismissed the appeal for lack of jurisdiction because the issue became moot. Exhibit 10.

116.  On February 11, 2018, Otero and Rodriguez filed a Motion to Vacate Void Judgment pursuant to Florida Rule of Civil Procedure 1.540 (b) (4). The motion asserted; (1) the judgment is void because it was procured by fraud. the Bank of New York Mellon is proceeding under a false identity, he cannot be the trustee for a non-existent (entity) securitized trust. At the September 10, 2014 final judgment hearing Defendant Otero, relying on the attorney's Sunny L. Hillary erroneous legal advice agreed to the terms of the last minute oral agreement. A consent judgment is a judicial approved contract, on September 10, 2014 Otero entered into a contract with a non-existent trust, a contract with a none-existent entity is nullity, and (2) the judgment is also void because Defendant Pura Rodriguez consent did not exist at the time the Court approved the last minute oral agreement and promulgated it as a judgment. The attorneys' extrinsic fraud deprived Rodriguez of an opportunity to present her case in court and the right to

fair trial. On June 25, 2018 Circuit Judge Bob LeBlanc denied the Motion to Vacate Void Judgment. Exhibit 11.

117.   The events preceding the filing of the February 11, 2018 Motion to Vacate Void Judgment are described more fully above. Plaintiffs reincorporate herein by reference the preceding paragraphs 17 through 23.

118.   Because the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg cannot and did not present even a scintilla of evidence to demonstrate the alleged securitized trust was created and is the legitimate owner of the subject mortgage and cannot and did not present even a scintilla of evidence to demonstrate the attorneys had Rodriguez consent to settled the foreclosure case, on June 26, 2018, Otero and Rodriguez appealed the post-judgment non-final order denying the February 11, 2018 Motion to Vacate Void Judgment, Case No. 5D18-2103. After the appeal was fully brief, the 5DCA three-judge panel Orfinger, Cohen and Wallis filed a Per Curiam affirmed (PCA) without written opinion. Exhibit 12. On the same day the panel filed an order to show cause (Exhibit 13) and ordered:

> Appellants shall file with this Court and show cause, within thirty days of the date of this order, why Appellants should not be prohibited from filing  any appeal, petition, pleading or motion pertaining to the final judgment rendered in Case No. 2014-CA-1836 unless reviewed and signed by an attorney licensed to practice in the State of Florida. See State v. Spencer, 751 So. 2d 47 (Fla. 1999).

Otero and Rodriguez filed a response to the order to show cause and on March 11, 2019 the panel filed a Per Curiam Opinion prohibiting further pro se filings attacking the September 10, 2014 judgment. Exhibit 14.

119.   On July 16, 2019, Otero and Rodriguez filed a motion on court's subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.140 (h) (2). The motion asserted the Plaintiff existence is required to invoke the Court 's subject matter jurisdiction, the February 20, 2014 complaint of foreclosure in the name of the non-existent (Plaintiff) Trust was not a proper pleading to invoke the court's power to hear and determined. To schedule a hearing on the motion Otero and Rodriguez initiated the mandatory meeting and confer process as established in the Florida Ninth Judicial Circuit Court Administrative Order No. 2012-03. On August 9, 2019 Circuit Judge Lisa T. Munyon stop the hearing scheduling process and entered an order denying the uncontested motion based upon the doctrine of law of the case. Exhibit 22.

120.   On February 11, 2020, Otero and Rodriguez initiated an independent action in the Florida Ninth Judicial Circuit Court against the Bank of New York Mellon ("BONYM"), NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoit") and attorneys Omar J. Arcia and Sunny L. Hillary, Case No. 2020-CA-1526. The court held a telephonic remote appearances hearing on Arcia's motion to dismiss on May 18, 2020. After the parties presented oral arguments Circuit Judge Chad K. Alvaro ("Alvaro") took the motion under advisement. On the same day Alvaro entered and order dismissing the claims against Arcia and

Hillary based solely on jurisdictional grounds and granted Otero and Rodriguez leave of court to file an amended pleading stating claims against defendants other than Arcia and Hillary. Exhibit 23.

121.  On May 25, 2020, Otero and Rodriguez filed the amended complaint. The third cause of action allege misrepresentations and fraud on the court against attorney Andrea R. Tromberg. In the amended complaint Otero and Rodriguez do not seek to set aside the final judgment of foreclosure and does not allege that they have been harmed by legal errors made by the court on September 10, 2014. Rather, they allege the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg wrongful conduct has caused them harm, an allegedly illegal act or omission by an adverse party. At the September 10, 2014 final judgment hearing, when Circuit Judge Theothis Bronson approved the last minute oral agreement he was unaware that BANA and the trustee of record, BONYM, did not have authority or power to initiate the foreclosure process on behalf of Cwabs Inc. Asset Backed Certificates Series 2004- SD2 (the "Trust"). Judge Bronson had no opportunity to verify that Defendant Pura Rodriguez understood the terms of the judicially approved contract (consent judgment) because she was not present. When Bronson signed the September 10, 2014 final judgment he was unaware that the attorneys initiated settlement negotiations, secretly agreed to act together in a way in which Otero and Rodriguez viable defenses would not be presented to the court and settled the case without Rodriguez knowledge and consent depriving Rodriguez of the opportunity to present her case in court and the right to fair trial.

122.  On September 21, 2020, the Court held hearing on BONYM and Shellpoint joint Motion to Dismiss Amended Complaint. On October 2, 2020, Circuit Chad K. Judge Alvaro entered an order granting the motion with prejudice based upon the doctrine of collateral estoppel. Exhibit 24. Otero and Rodriguez filed a notice of appeal. Exhibit 25. The 5DCA denied the request to review Judge Alvaro's decision. By letter dated 6 October 2020 5DCA Deputy Clerk Sheila N. Stanbro notified that "all pro se filings are to be rejected unless filed by a member in good standing of the Florida Bar. Exhibt 26.  On November 26, 2020, Otero and Rodriguez filed a Petition for Writ of Mandamus. By letter dated 6 November 2020 Deputy Clerk Sheila N. Stanbro notified that "no new petition will be established". Exhibit 27.

123.   In the January 22, 2019 Order to Show Cause (Exhibit 13) Wallis stated:

> Appellants, Israel Otero and Pura Rodriguez, continue to raise the same claim, which has been considered on the merits, disposed of by the trial court, and reviewed in this court on multiple occasions."

In the March 11, 2019 Per Curiam Opinion (Exhibit 14) Wallis ruled:

> Due to Appellants' apparent abuse of the legal process by their repetitive, malicious, or frivolous pro se filings attacking the judgment in Orange County Circuit Court Case Number 2014-CA-1836..... we conclude that they are abusing the judicial process and should be barred from further pro se filings. Any future filings regarding the referenced case will be summarily rejected by the Clerk, unless filed by a member in good standing of The Florida Bar.

The order to show cause indicate Wallis agreed with Circuit Judge Bob LeBlanc denial of the motion to vacate void judgment on res judicata grounds and indicate Wallis applied the law of the case doctrine. Procedural due process requires at least for the government to afford the person a neutral decision maker and that the decision be made based on the record. On March 11, 2019 Orfinger deliberately disregarded:

A.  In the Circuit Court and in the Fifth District Court of Appeal the Bank of New York Mellon, Shellpoint and Andrea R. Tromberg cannot and did not present even a scintilla of evidence to demonstrate that the (Plaintiff) securitized trust was created in 2004. A consent judgment is a judicial approved contract. On September 10, 2014, Otero relying on the attorney's Sunny L. Hillary erroneous legal advice agreed to the terms of the contract, a contract with a none-existent entity is nullity.

B.  The attorneys settled the foreclosure case without Rodriguez knowledge and consent, depriving Rodriguez of an opportunity to present her case in court and the right to fair trial.

C.  On March 8, 2015, Circuit Judge Margaret Schreiber did not allow full presentation of arguments in support of the rule 1.540 (b) (3) motion to vacate judgment to accord the full right to be heard according to law, disregarded the attorneys extrinsic fraud, and refused to conduct the 3 hours evidentiary hearing ordered by Circuit Judge Charles Holcomb.

D. The appeals on Florida Fifth District Court of Appeal Case No. 5D15-1124 and Case No. 5D16-1551 were dismissed for lack of jurisdiction. By its nature, an

order dismissing an appeal signifies that the court did not reach the merits.
Dismissals of appeals generally do not establish the law of the case.

E.  Where successive appeals are taken in the same case there is no question of
res judicata, because the same suit, and not a new and different one, is involved.

F.  Circuit Judge Bob LeBlanc June 25, 2018 decision was arbitrary and his
order entered without explanation was not sufficiently specific to indicate that he
ruled on the merits. The Supreme Court of Florida has recognized that the law of
the-case doctrine was meant to apply to matters litigated to finality, not to matters
that remain essentially unresolved due to the erroneous ruling of a lower court.

G.  Federal Courts and the Supreme Court of Florida has recognized that the
law of the case, res judicata and collateral estoppel will not be invoked to bar relief
where its application would result in a manifest injustice

124.  Due process does not permit fraud on the court to deprive any person
of property. The fact that Otero and Rodriguez owed money on their house was not
the point. They would gladly resume payments on the mortgage. But the trustee
bank doesn't own the loan because a trustee is only a nominal or formal party suing
on behalf of the trust, the investors don't own it because the securitization trust was
never created and the original lender, Republic Bank, no longer exists. So whom
do they pay?

125.  The right to sue and defend in the courts is one of the highest and most
essential privileges of citizenship. The Sixth Amendment to the United States
Constitution, in addition to guaranteeing the right to retained or appointed counsel,

also guarantees a defendant the right to represent himself. Article I, Section 21 of the Florida Constitution establishes the fundamental right to self-representation and is self-executing. Its language is mandatory and all-encompassing:

> The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.

Revision 7 to Article V of the Florida Constitution makes no changes to the constitutional principles pertinent to due process, access to courts, open courts, and self-representation. Litigants have the right to represent themselves in any matter in any court. The command that the courts "be open to every person" means more than that the business hours are from nine to five. Yet when confronted with practical problems - a poor person, with few assets and no funds to pay an attorney - the court have ignored the plain language of the section. Wallis Knew Otero and Rodriguez have few assets and no funds to pay an attorney and by ruling that "They abuse the legal process by their repetitive, malicious, or frivolous pro se filings attacking the judgment in Orange County Circuit Court Case Number 2014-CA-1836" and prohibiting pro se filings; (1) no attorney will take the case because of the fear of sanctions, (2) the Circuit Court will dismiss any lawsuit against BONYM, Shellpoit and Andrea Tromberg, (3) the Fifth District court of Appeal will reject any appeal, petition, pleading or motion and (4) BONYM will buy Otero and Rodriguez house at the foreclosure auction.

126. There was not trial held on September 10, 2014. After the fraud came to light it is evident that Otero and Rodriguez are entitled to a fair trial. Wallis's March 8, 2019 ruling was arbitrary. By tolerating fraud on the court he failed to uphold the integrity of the judiciary and deprived Otero and Rodriguez of their constitutional rights to; access to courts, seek judicial relief for their injury, self-representation, a neutral arbiter, and fair trial. Disregard of the law, evidence and established precedent, allow fraud on the court and failure to uphold the integrity of the judiciary is not the type of act normally performed only by judges. What Wallis did was beyond the pale of anything that could sensibly be called a judicial act. The wrongful conduct harmed Otero and Rodriguez. They were compelled to defend against a fabricated claim which not only subjects them to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, magnified by the slanderous allegations in the pleadings. They were forced to spend time and money, the funds necessarily expended to defend against the wrongful legal proceedings are damages for loss of property and the time spending defending against the meritless suit, itself an injury. Wallis put Otero and Rodriguez in harm's way, they facing irreparable harm from the threat of losing their home.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## MISREPRESENTATION; FORECLOSURE FRAUD;
## FRAUD ON THE COURT
### (Against Bank of New York Mellon)

127.  Plaintiffs' reincorporate by reference the preceding paragraphs 16-26.

128. To the extent that Defendant BONYM willfully, illegal actions, counted above, constitute misrepresentation, foreclosure fraud and fraud on the court. The conduct above caused injury and the risk of future harm, was done with conscious disregard of Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs', so as to constitute oppression, fraud and malice, entitling Plaintiff to punitive damages.

## SECOND CAUSE OF ACTION
## MISREPRESENTATION; FORECLOSURE FRAUD; FRAUD ON THE COURT; VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT
### (Against NewRez LLC d/b/a Shellpoint)

129. Plaintiffs' reincorporate by reference the preceding paragraphs 27-37.

130. To the extent that Defendant Shellpoint willfully, illegal actions,

counted above constitute misrepresentation, foreclosure fraud, fraud on the

court, and violation of Fair Debt Collection Practices Act ("FDCPA"). The conduct

above caused injury and the risk of future harm, was done with conscious disregard

of Plaintiffs' rights and with the intent to vex, injure or annoy Plaintiffs', so as to

constitute oppression, fraud and malice, entitling Plaintiff to punitive damages.


### THIRD CAUSE OF ACTION

MISREPRESENTATION; FORECLOSURE FRAUD; FRAUD ON THE
COURT; VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT
(Against Tromberg Morris & Poulin PLLC and Andrea R. Tromberg)

131.  Plaintiffs' reincorporate by reference the preceding paragraphs 38-48.

132. To the extent that Defendants TMP and Andrea R. Tromberg willfully,

illegal actions, counted above constitute misrepresentation, foreclosure fraud, fraud

on the court and violation of the Fair Debt Collection Practices Act ("FDCPA").

The conduct above caused injury and the risk of future harm, was done with

conscious disregard of Plaintiffs' rights and with the intent to vex, injure or annoy

Plaintiffs', so as to constitute oppression, fraud and malice, entitling Plaintiffs to

punitive damages.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983

### (Against Circuit Judge Bob LeBlanc)

133. Plaintiffs' reincorporate by reference the preceding paragraphs 49-61.

134. To the extent that Defendant LeBlanc wrongful conduct, counted above violated the United States Constitution.


## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 1983

### (Against Circuit Judge Lisa T. Munyon)

135. Plaintiffs' reincorporate by reference the preceding paragraphs 62-74.

136. To the extent that Defendant Munyon wrongful conduct, counted above violated the United States Constitution.


## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983

### (Against Circuit Judge Chad K. Alvaro)

137. Plaintiffs' reincorporate by reference the preceding paragraphs 75-82.

138. To the extent that Defendant Alvaro wrongful conduct, counted above violated the United States Constitution.

## SEVENTH CAUSE OF ACTION

### 42 U.S.C. § 1983

#### (Against 5DCA Judge Richard B. Orfinger)

139. Plaintiffs' reincorporate by reference the preceding paragraphs 83-96.

140. To the extent that Defendant Orfinger wrongful conduct, counted above violated the United States Constitution.

## EIGHTH CAUSE OF ACTION

### 42 U.S.C. § 1983

#### (Against 5DCA Judge Jay P. Cohen)

141. Plaintiffs' reincorporate by reference the preceding paragraphs 97-111.

142. To the extent that Defendant Cohen wrongful conduct, counted above violated the United States Constitution.

## NINTH CAUSE OF ACTION

### 42 U.S.C. § 1983

#### (Against 5DCA Judge F. Rand Wallis)

143. Plaintiffs' reincorporate by reference the preceding paragraphs 112-126.

144. To the extent that Defendant Wallis wrongful conduct, counted above violated the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Otero and Rodriguez respectfully prays that judgment be entered in their favor and against Defendant BONYM for the following:

1. An award of actual damages.
2. An award of loss of property in such amounts as shall be established by proof at time of trial.

3. Emotional distress damages as shall be established by proof at time of Trial.

4. Exemplary and/or punitive damages.

5. Interest, expenses, costs of suit, and reasonable attorney's fees (if Plaintiffs' hire a lawyer) to the extent permitted by law; and

6. Any other relief the Court may deem just and proper.

Plaintiffs prays that judgment be entered in their favor and against Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing, Tromberg, Morris & Poulin PLLC and Andrea R. Tromberg for the following:

1. Statutory damages pursuant to 15 U.S.C. §1692 k.
2. An award of actual damages;
3. Exemplary and / or punitive damages.
4. Emotional distress damages as shall be established by proof at time of Trial.

5. An award of loss of property in such amounts as shall be established by proof at time of trial.

6. Interest, expenses, costs of suit, and reasonable attorney's fees (if Plaintiffs' hire a lawyer) to the extent permitted by law, and

7. Any other relief the Court may deem just and proper.

Plaintiffs prays that a declaratory decree be entered against Circuit Judges Bob LeBlanc, Lisa T. Munyon and Chad K. Alvaro. Plaintiffs' seek a declaration that this judges, in their official capacity, violated and continues to violate the Constitution.

1. Deprivation of access to court.
2. Deprivation of due process right to a neutral arbiter.
3. Deprivation of the right to trial.

Plaintiffs prays that a declaratory decree be entered against Florida Fifth District Court of Appeal Judges Richard B. Orfinger, Jay P. Cohen and Federic Rand. Plaintiffs' seek a declaration that this judges, in their official capacity, violated and continues to violate the Constitution.

1. Deprivation of access to court.
2. Deprivation of right to self-representation.
3. Deprivation of due process right to a neutral arbiter.
4. Deprivation of the right to trial.

## TRIAL BY JURY

Plaintiffs Otero and Rodriguez requests a trial by jury for all claims thereby triable pursuant to their rights under the Seventh Amendment to the United States Constitution.

Respectfully submitted this 25th day of January, 2021.


*Israel Otero*

**ISRAEL OTERO**

7216 GLASGOW AVENUE
ORLANDO, FLORIDA 32819
TEL: 407-470-3759
EMAIL: rayomtg2000@yahoo.com


*Pura Rodriguez*

**PURA RODRIGUEZ**

99